Ruffin, C. J.
 

 The provisions of our attachment law were, in our opinion, correctly construed by his Honor. That part of it, which was taken from the act of 1777, authorizes a person to whom one removing is indebted, to take out an attachment for his debt or demand,” and to have it levied “ on the estate of such debtor, or in the hands of any person
 
 indebted to,
 
 or having any of the effects of the defendant;” and it provides that where the attachment shall be thus served in the hands of one, supposed “to be indebted to or to have any of the effects” of the party defendant, the garnishee shall be summoned to answer on oath “
 
 what
 
 he is
 
 indebted to
 
 the defendant, or what effects of his he hath in his hands;” and upon the examination of the garnishee, the court shall “ enter judgment and award execution against the garnishee
 
 *286
 
 for all
 
 sums of money due
 
 to the defendant from him, or for all effects&c” ^ seems plain upon the act thus far, that the garnishee could only be called on to account for specific estate an(^ e®ects belonging to the debtor and left with the garnishee as the effects of the debtor, or for a
 
 debt
 
 owing from the garnishee and then due to the debtor. The plaintiff in attachment is permitted to use that process to recover his “debt or demand.” But when the subject, on which the process may be served, is spoken of, the phraseology limits its operation yet more narrowly, by requiring it to be served in the hands of one
 
 indebted
 
 to the defendant. And it would seem, indeed, that the indebtedness, at first, must have been in a sum of
 
 money then due;
 
 since
 
 the
 
 act
 
 directs an
 
 immediate judgment and execution, and uses the language “sum of money due.” Under the act of
 
 1777,
 
 we think it clear, that no demand could be attached in the hands of a garnishee but one that was a
 
 debt
 
 in a legal sense, and for which •an action of debt or
 
 indebitatus assumpsit
 
 would lie, or arising upon a liability or negotiable paper, as upon drawing a bill of exchange, or endorsing it on a promisory note, in which case the measure and nature of the party’s liability are as clearly defined and as well ascertained in the law merchant, as those of an obligor in a bond or the maker of a note. That act did not even embrace the cases of acknowledged money debts, not due at the time, or an indebtedness in specific articles; nor provide for a denial by the garnishee of his indebtedness. The attachment could only be served on one “indebted;” and the judgment w.as to be “upon his examination only”- — -which yet more clearly evinces, that it could only apply to such demands, of which the garnishee could conscientiously and with reasonable certainty state the amount on his oath, and not to a case of uncertain damages, of -which there is no standard until assessed by a jury. If the present-case had, therefore, arisen before the act of 1793, it is apparent it could not have been sustained. Here it is impossible to say, that Booth and Porter were
 
 indebted
 
 to Seldon Tryon, the defendant in attachment. For if the contract had been for the sale and purchase of tin-ware at specific prices, to be paid at the time of delivery in money
 
 *287
 
 or otherwise, Tryon, upon the tender merely oí the payment, could not recover the value of the ware, as a debt; but could ? ' sue only on. the special agreement, and recover, in damages, the difference between the price the purchaser was to give, and the market value, when they ought to have been delivered. It would be the same case here. It is true, Otis Porter is said to have become insolvent, so that it is possible his notes' may be worth nothing. But that is not absolutely certain, as he might from his age, connexions, or enterprise, probably at some day be able to pay the notes or some part oí them. At all events a jury might think so; and they would be bound to make the estimate, since Tryon-
 
 did not transfer
 
 those notes to Booth and Porter so- as to vest them in those parties for what they were worth, be that little or much, but chose to keep them himself. They are, thus, still his, and he would have to account for them before the jury, and could recover only the difference between their value — as it might be made to appear- — and the val ue of the tin-ware. This, therefore, was not a money debt, nor even a debt of any sort: but a liability upon a contract for unliquidated damages.
 

 But it was argued, that the other parts of the act, taken from the act of 1793, c. 389, have provisions which will embrace this case. Upon an attentive consideration of them, however, we think otherwise; and, indeed, those parts of the act but-serve to confirm the previous construction. They first authorize the plaintiff to take issue on the garnishment; but still terms are used equivalent to those in the act of 1777: this section saying, “ when the garnishee shall deny, that he
 
 owes
 
 to, or has property of the defendant in his hands,” then the plaintiff may suggest that the garnishee
 
 “ owes to
 
 &c.” and an issue shall be submitted to a jury. Then follows a provision for other debts besides those in money, namely, where the garnishee “is
 
 indebted
 
 to the defendant by any security or assumption for the delivery of any
 
 specific articles f
 
 in which case the garnishee may either deliver the articles in exoneration of himself,"or according
 
 to
 
 the circumstances, they are to be valued by a jury, and a judgment rendered against the garnishee therefor-
 
 *288
 
 And, lastly, the case of a debt not due is provided for in these words: “ When a garnishee shall declare that
 
 the money
 
 or
 
 specific article
 
 due by him will become
 
 payable
 
 or
 
 deliverable
 
 at a future day,” then there shall be a conditional
 
 J
 
 judgment in the first instance, and a final one on
 
 scire facias.
 
 As to a money demand subject to attachment, the act of ’93 does not alter that of 1777, except to add one not due to that which was due, and to allow the plaintiff to take an issue, when the garnishee denies the existence ot a debt of either kind. It does, however, enlarge the list of the subjects of attachment, by adding the indebtedness in specific articles. But the nature of the contract, upon which the specific article is deliverable, cannot be misunderstood. It is classed with that, on which the garnishee has bound himself to pay a money debt, and the two are put on the same footing. It can, therefore, only mean a security or assumption for a certain sum of money, payable in specific articles at a particular day, (which are very common contracts, and are called
 
 “
 
 trade notes,”) or absolutely to deliver to another a certain quantity of specific articles, as 100 bushels of corn. On either of those instruments debt would lie at the common law; as in the one case the contract is really for money, to be discharged in specific articles, if the obligor offer them; and in the other, the obligation is complete and the value may be averred and rendered certain on evidence. But upon an ordinary contract of sale, where both
 
 parties are to do
 
 something — the seller engaging to deliver certain things at a day and place named, and the purchaser then to pay for them and receive them; the latter cannot bring debt for the value of the things the other ought to have delivered, but may have his action on the special agreement for damages; and the damages are not necessarily, as has been seen, nor ordinarily, the full value of the articles. There may be many reasons why they should be less; and among them, the fact, here existing, that the party claiming the damages, has kept ,vhat he was to have given to the other party as the price, and, therefore, the difference between the value of that and of the goods is a full indemnity for his loss. Damages arising on such a transaction is not a
 
 debt,
 
 subject to
 
 *289
 
 attachment under the statute. It would in very many cases, produce renewed litigation between the defendant in attachment and the garnishee, if such demands were liable to be attached. In every case in which there could be a different view of the amount of damages which the garnishee ought to pay, the other party would say he had not admitted on his garnishment as much as he ought, or the jury had not properly assessed them, and he would bring a new action to recover what he claimed as the true amount. We think the intention of the Legislature was only to embrace the cases, in which the demand may be easily ascertained; so that in a subsequent action against the garnishee by his creditor, it may be plainly seen, that it was covered by the garnishment and condemnation in the attachment, and, therefore, may be properly pleaded as a bar to the second action, brought by the creditor himself. But that can never be said of a demand, arising out of the breach of a special agreement, which sounds altogether in damages, about the amount of which persons might differ, and which might, indeed, be varied by circumstances, not known even to the garnishee, but to the other contracting party only.
 

 Per Curiam, Judgment affirmed,