No. 2121.

G. H. MENSING *v.* F. A. ENGELKE.

1. GARNISHMENT.—In contesting the answer of a garnishee, it appeared that between the service of the garnishment and the return day of the term on which the garnishee answered, he had received cotton under a contract with the debtor, made before the issuance of the writ, that it should belong to the garnishee and be under his absolute control until the payment of the debtor's drafts cashed by the garnishee and drawn on his principals in the east, against the cotton purchased by the debtor for them and to be shipped east. The garnishee advanced in this manner, from time to time, money, with the distinct stipulation that any and all balances at any time due from the debtor to the garnishee on bank account were hypothecated to the garnishee until all amounts thus due were settled and all drafts cashed in the manner above referred to were paid; this being also as security against the failure of the debtor's eastern principals, depreciation in the value of cotton purchased, and its loss by accident or fire. *Held:*

(1) The service of the writ could not work a change in the contract between the garnishee and the debtor, or compel the former to violate his contract in order to create a fund for the payment of the debts of the latter.

(2) The contract could be carried out, notwithstanding the garnishment, and the garnishee could only be charged with the amount of such balances as might become due the debtor, or for such effects of his as might come to the garnishee's possession.

(3) The effect of the contract was to give the garnishee a lien upon the cotton bought and in his possession until the money advanced was repaid, and the plaintiff could only claim the excess of the proceeds of the cotton in the hands of the garnishee, over and above the amount necessary to satisfy that lien. There being, according to the facts found by the court, no such excess, it was further *held:*

(4) To carry out the meaning of the contract, the cotton should have been shipped for the east and for the garnishee's benefit until he was reimbursed, unless a mutual agreement was made to the contrary.

(5) So long as the garnishee complied with the spirit of the contract

and paid over on drafts the money necessary to buy the cotton, he had a right to dispose of the cotton under the agreement in order to have the purchase money refunded, with his charges for advancing, as well as the expenses paid by him, and premium on exchange. The debtor could not impair or question this right until all balances due the garnishee were repaid, and the plaintiff was in no better position.

(6) The debtor could not, under the contract, have compelled the garnishee to sell the cotton where it was purchased before shipment, though better prices might have been realized, and the plaintiff had no greater right than the garnishee in this respect.

(7) The cotton being purchased for account of eastern capitalists, subject to the rights of the garnishee for advancing on drafts, and after being sold in the eastern market for its full value, not realizing more than enough to reimburse the garnishee for his advances, the fact that he did not preserve the weights and grades can not be regarded as evidence of the intention of the garnishee to assist the debtor in a fraud.

(8) The payment of attorney's fees being provided for in the contract, the garnishee could not be charged with the amount of such fees paid for the debtor in this proceeding, it not being shown that anything was due the debtor when they were paid.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

*Sayles & Bassett,* for appellant, relied on the following propositions and authorities:

1. The transactions between Axer and Engelke were substantially a pledge or mortgage of the cotton, to secure Engelke in his advances. (Mensing v. Axer & Engelke, Austin Term, 1884, 3 Texas Law Review for May 6, 1884, p. 285.)

2. In the absence of an express stipulation, the pledgee could enforce his lien only by a judicial sale, or by a public sale after notice. (Luckett v. Townsend, 3 Texas, 119; Jones v. Thurmond, 5 Texas, 318; Story on Bailments, secs. 310, 311, and note 4; Jones on Pledges, secs. 603, 607–609, 610; Brass v. Worth, 40 Barb., 648; McNeil v. Tenth National Bank, 55 Barb., 59.)

3. Upon the service of the writ of garnishment, the plaintiff became subrogated to the rights of Axer, and notice to him of the intention to sell and of the time and place of the sale became necessary, and the consent of Axer could not validate a subsequent sale made in derogation of the plaintiff's rights. (Drake on Attachments, secs. 674–677, 539; Story on Bailments, sec. 350; State v. Linaweaver, 3 Head, Tenn., 51; Revised Statutes, art. 191.)

4. Upon the facts stated by the garnishee and the witnesses

Axer and Brown, the transactions between Axer and the eastern mills and dealers upon whose orders he bought cotton were not completed sales, but were at most mere contracts of sale, in which the title did not pass to such pretended purchasers, but remained in Axer, subject to the rights of the garnishee as pledgee in possession, and became subject to the plaintiff's writ; and the subsequent delivery of such cotton by Axer and the garnishee to such pretended purchasers at the contract price, being less than the current market price at the date of delivery, was in derogation of the rights of the plaintiff and unauthorized, and constitutes no defense to the garnishee. (Allen v. Melton, Austin Term, 1885.)

7. The sales being unauthorized, the garnishee is liable for the highest value of the cotton as shown by the evidence. (Randon v. Barton, 4 Texas, 289; Calvit v. McFadden, 13 Texas, 324; Stephenson v. Price, 30 Texas, 715; Field on Damages, 798; Brass v. Worth, 40 Barb., 648; McNeil v. Tenth National Bank, 55 Barb., 59; Brown v. Silsby, 10 New Hampshire, 521, 2 U. S. Dig., N. S., sec. 3387, p. 269; Stedman v. Vickery, 42 Me., 132, 2 U. S. Dig., sec. 3141, p. 256.)

*J. T. Swearingen*, for appellee, on his proposition that plaintiff Mensing could not require Engelke, the garnishee, to hold fourteen hundred bales of cotton, of the value of over seventy-eight thousand dollars, for the benefit alone of the plaintiff's claim against another amounting to three thousand five hundred dollars, without providing some indemnity against loss which was certain—except in case of a remote contingency—cited Oldham & White's Digest, Article 423; Constitution 1876, Article 1, section 19; Price v. Brady, 21 Texas, 614; White & Willson's Civil Cases, section 1045.

That under the contract between Engelke, the garnishee, and Axer, the debtor, made previous to the service of the writ, and providing "that Axer shall deliver to said Engelke, at Brenham, all and every the cotton purchased and paid for with money drawn from Engelke, * * * and that said cotton shall be and remain the property of said Engelke, and in his possession and absolute control, until the payment of all drafts or advances made by Engelke," gave Engelke the right to sell the cotton, the purchase money of and expenses on which had been paid by him, cited Childress v. Gust. Heye & Co., 4 Texas Law Reporter, 471; Baugh v. Kirkpatrick, 54 Pennsylvania State, 84; Drake,

---

---

section 453a; Gibson v. Stevens, 8 Howard, 384; Baltimore & Ohio Railroad v. Wheeler, 18 Maryland, 372; Baker v. Drake, 23 American Reports, 80; White & Willson's Civil Cases, 970, 1046, 1118.

That the effects in the hands of the garnishee remain subject to any pre-existing contract or lien in favor of the garnishee, which must first be satisfied before the effects can be held subject to the garnishment, he cited Sayles's Practice, third edition, 391, and authorities cited; Drake, third edition, sections 391–397.

That prior to the adoption of the Revised Statutes, Article 191, making it unlawful for the garnishee to pay to the defendant any debt, or to deliver to him any effects in his hands, applied only to joint stock companies and corporations. The writ in this case having been served April 8, 1879, before the adoption of the Revised Statutes, the above Article had no application to the defendant, he cited Acts of the Legislature, March 13, 1885, page 104; Drake on Attachments, section 667; White & Willson's Civil Cases, section 970.

WILLIE, CHIEF JUSTICE.   The appellant Mensing being a judgment creditor of William Axer, sued out a writ of garnishment against the appellee, F. A. Engelke. The garnishee denied indebtedness to Axer or possession of any of his effects, and this answer was contested by the appellant. The cause was tried by the court without a jury and judgment rendered for the garnishee, and from this judgment Mensing appealed.

The writ of garnishment was served upon Engelke April 18, 1879, and his answer was filed on September 5, 1879, which was the return day of the succeeding court.

On October 1, 1878, Axer and Engelke entered into an agreement, of which the following is a copy:

"THE STATE OF TEXAS, }
"COUNTY OF WASHINGTON. }  ss.

"This memorandum of contract, this day made and entered into by and between Wm. Axer of the first and F. A. Engelke of the second part, witnesseth,

"WHEREAS, the said Wm. Axer desires to continue his business as cotton buyer in the city of Brenham, State and county aforesaid, upon orders and for account of eastern purchasers, and desires to realize in Brenham upon drafts drawn by him upon his principals (for whom he may purchase) against the cotton so

purchased, and whereas, to facilitate the said Axer in his said purchases as aforesaid, the said F. A. Engelke has consented to cash such drafts as said Axer may from time to time draw against cotton purchased for eastern buyers by said Axer.

"Now, therefore, in consideration of the premises and to fully secure and indemnify the said F. A. Engelke against loss by reason of advancing money upon such drafts as are above contemplated, or any other loss, damage, expense or cost, including counsel fees incurred or that may be incurred by reason of the transactions herein contemplated or connected therewith, or in any manner arising therefrom, it is hereby agreed,

"1. That the said Wm. Axer shall deliver to the said F. A. Engelke at Brenham all and every the cotton so purchased and paid for with money drawn from him, said Engelke, on drafts upon dealers for whom said Axer so purchases, and the said cotton so delivered shall be and remain the property of said Engelke and in his possession and absolute control until the payment of all such drafts as are hereinbefore referred to.

"2. In addition to the delivery and possession of the cotton as above provided for, and as still further security to the said F. A. Engelke against the losses, costs and expenses as herein above mentioned, or that might or may arise from failure of said Axer's principals, or from depreciation in the value of cotton or loss thereof by accident, fire or any other contingency, it is hereby stipulated and agreed that any and all balance at any time due said Axer on bank account with said Engelke is hereby hypothecated to and may be held by said Engelke until all amounts between said Axer and said Engelke shall have been fully settled and all drafts cashed as above mentioned shall have been paid.

"Witness my hand, the first day of October, 1878.

(Signed)                          "WILLIAM AXER.
                                  "F. A. ENGELKE."

The judge below found as conclusions of fact that between the eighth of April and the fifth of September, 1879, Engelke had in his hands one thousand four hundred and twenty-one bales of cotton, bought by Axer and paid for by Engelke, he holding the cotton as security for the money advanced.

That all of said cotton, except six bales, was sold by the concurrent action of Axer and Engelke at private sale without any notice to Mensing.

That the cotton was sold for its fair value in the market at the time of the sale.

That the amount for which said cotton was sold, including the six bales on hand, on the fifth of September, 1879, was insufficient to repay Engelke the money he had advanced on the cotton.

That the transactions between Engelke and Axer were all had under the written agreement.

Upon these findings he discharged the garnishee.

If the garnishee was not indebted to Axer, and had no effects of his in possession when the garnishment was served, or from that time continuously down to and including the date of filing the answer, he was, of course, properly discharged. Whether Engelke owed Axer, or had property of his in possession during such time, must be determined by the nature of the contract between them and their course of dealing under it both before and after the writ was served. It is a cardinal principle in the law of garnishment that the service of the writ can not have the effect of changing the nature of a contract between the defendant and the garnishee. (Balt. & Ohio Railroad Co. v. Wheeler, 18 Maryland, 372.) The attaching creditor stands upon no higher footing than his debtor, in relation to the garnishee, and can not compel the latter to violate his contract for the purpose of creating a fund for the benefit of the plaintiff which would not exist in case the contract were faithfully carried out according to its terms, and its true intent and meaning. (Baugh v. Kirkpatrick, 54 Pennsylvania State, 84.)

Whatever contract existed between Axer and Engelke as to the purchase and shipment of cotton and the dispostion of its proceeds, at the time the garnishment was served, could still exist, notwithstanding the garnishment; and unless in the legitimate performance of such contract Engelke became indebted to Axer, or became in possession of effects belonging to him subject to garnishment, he could not be charged as garnishee. No fraud would be perpetrated against the plaintiff; no money or other effects belonging to his debtor placed beyond his reach by the act of the garnishee.

The contract in question contemplated a purchase by Axer of cotton upon orders and for account ot eastern purchasers. This shows that the purchases were to be made by Axer as agent for other parties; indeed, the eastern purchasers are denominated his principals in the contract itself. Axer's drafts upon his principals were to be cashed by Engelke, and the cotton bought

was to "remain the property of said Engelke, and in his posses-
sion and absolute control until the payment of all such drafts
as" Axer might thus draw upon his principals. To put the most
favorable construction possible for the appellant upon this pro-
vision, it gave Engelke a lien upon the cotton thus bought and
in his possession, till the money advanced by him should be
refunded.

The most that could be claimed by the appellant was that the
excess of the proceeds of the cotton in the hands of Engelke,
over and above sufficient to satisfy his lien upon the same, should
be appropriated to the payment of his judgment. Indeed, there
are numerous decisions to the effect that, under such circum-
stances, the property is not subject to garnishment at all in the
hands of the lien holder. See Badlam v. Tucker, 1 Pickering,
389, and other authorities cited in note 2 to section 539, Drake on
Attachment.

But as this is a case where the property in the hands of the
garnishee was to be sold to pay the debt for which it was pledged,
the excess of the proceeds of sale, above the amount necessary
to satisfy the lien, may be considered as subject to garnishment.
The evidence abundantly proved that Engelke was at no time
behind with Axer on account of cotton transactions occurring
under the contract. The only question then is, was the contract
faithfully carried out after the service of the writ of garnish-
ment?

As to this the plaintiff says: First, that the contract did not
provide that the cotton was to be shipped to eastern purchasers,
but that it was to remain in the hands of Engelke as a pledge for
the money advanced by him upon it. If we look at the object of
the contract, and the manner in which the money to repay En-
gelke's advances was to be raised, no other construction can be
given to the instrument except that the cotton should be shipped
to the north subject to the order of Engelke, and for his benefit.
The object as stated was to furnish Axer money to pay for cot-
ton bought for his eastern principals, and drafts were to be
drawn by him upon his principals against the cotton so pur-
chased. How this could be done without a shipment of the cot-
ton to the purchasers who were to pay Axer's drafts is not appa-
rent. It could not certainly be done otherwise unless those
purchasers constituted Engelke their agents to hold the cotton
for them, and treated its delivery to him as a delivery to them-
selves, which in view of the evidence, the nature of the contract,

and the relation which the parties to it bore to those purchasers, is unreasonable.

To carry out the spirit of the contract a shipment to eastern purchasers was necessary, and a consent of both parties was essential to any other disposition of the cotton. This, too, was the construction placed upon the contract by the parties themselves from the time it was made down to the filing of the garnishee's answer. The cotton purchased by Axer with the money of Engelke was always shipped to the person for whom it was purchased, unless by mutual consent of Axer and Engelke it was sold in the home market, and then Engelke got the sole benefit of the purchase money, and the eastern purchasers received other cotton in its stead. Axer had no right to compel Engelke to hold it; if so, the fall in the price or the accumulated interest upon the money advanced, or the rise in freights might have reduced the value of the property as a security to Engelke.

So long as Engelke complied with the spirit of his agreement, and paid over the money necessary to buy the cotton, he had a right to dispose of it in the manner contemplated by the agreement in order to have the purchase money refunded, together with his charges for advancing; the expenses paid by him, and the premium upon exchange, which was one of the principal, if not the main source, from which he derived any profit from such transaction. Axer at least could not force him to do otherwise with the cotton without tendering him everything due or to fall due upon it if shipped, and the plaintiff was in no better position in this respect than was Axer.

2. But the appellant says that, at the time some of the sales of shipments north were made, cotton was worth more in Brenham than it was in the places where it was sold, and Engelke was bound to sell at Brenham for the protection of the plaintiff. The plaintiff had no greater rights in the cotton than Axer had, and he could not have compelled Engelke to sell at home, as we have seen, at least without tendering him expenses and all profits which he could reasonably reap from a sale of the cotton in foreign markets. Nothing of this sort was done by the plaintiff; but his contention is that, as successor to the rights of Axer, he could compel the garnishee to acquaint himself with the state of the market, to sell where he could sell highest, and pay over whatever would have been coming to the defendant, in case of such sale, to the plaintiff, though the garnishee might lose

thereby, where he could not have lost in fulfilling this contract as made by him.

Axer having no right to change the contract without the garnishee's consent, the plaintiff could not do so. The change proposed would have made Engelke the recipient of cotton from Axer belonging to northern purchasers, and bought by Axer upon their orders, for the purpose of applying a portion of it to the payment of the plaintiff's debt, and thereby to suffer a loss not contemplated by the contract. It would have compelled him to violate the spirit and meaning of his contract, to the injury of himself and other owners of the cotton, to make a profit for Axer, to be reaped by the plaintiff in garnishment. This does not seem reasonable, and there is no law for it so far as we can discover. But if the plaintiff's position were correct, we can not see, upon a close examination of the evidence—making allowances for the advance in the price of cotton, the price of freights and other expenses attendant upon its shipment—that the cotton did not bring its full value at the time it was sold in the northern markets.

3. The plaintiff further says that it was the duty of the garnishee to preserve the weights and grades of the cotton bought and shipped, in order to show that it was sold for a fair price and that none of its proceeds in the hands of Engelke belonged to Axer. He claims that the failure to do so is evidence of an intention on the part of Engelke to assist Axer in an attempt to defraud his creditors. We do not so regard it. It was shown that the cotton was bought for eastern purchasers on orders, and belonged to them, subject to such claim as Engelke had against it by reason of his advancing the purchase money. The only object in knowing the grade or class of the cotton was to ascertain its value. But what difference would it have made, under the circumstances, whether it was of one value or another? The very cotton bought went east and brought its full value there, and yet not enough to more than pay what was due upon it to Engelke.

If Axer drew upon Engelke for more than the cotton was worth (which was shown not to be the case), the money was paid to the owners of the cotton and not to him. If they allowed him to take any of the proceeds of the draft, it was their fraud and not Engelke's; and, if it was committed, it was within the power of the plaintiff to prove it by the owners, and no attempt to make this proof was made. It was to the garnishee's interest

to see that he paid no more for the cotton than it was worth. The payment of more would have been a fraud upon himself. He shows that he was sufficiently watchful of his own interest to prevent this fraud; and, it not being shown that the plaintiff was defrauded by a failure to preserve a statement of weight and classification of the cotton, the court below properly refused to find to that effect.

4. The plaintiff complains that the garnishee paid out, pending the garnishment, certain sums 'of money for the benefit of Axer, not coming within the scope of the contract, and that for these he should be held liable. So far as the one hundred dollars paid Swearingen is concerned, that was shown to have been paid in his fee for representing the garnishee in this case. The contract makes attorney's fees a charge against the cotton. There was no objection to such an agreement at the time it was made, and hence to carrying it out after the garnishment was served. But it is a sufficient answer to the objection made to all these payments, that it is not shown that they came out of the proceeds of the cotton. It is not made to appear that at the time they were made the garnishee was indebted to Axer in any amount whatever, or that subsequent proceeds of the cotton went toward their payment. On the contrary, it does appear that large sums of money were paid by Axer to Engelke to make good his account, and that these were in excess of what Engelke had paid out for his benefit. The garnishee, therefore, did not pay any debt or deliver any effects to Axer pending the garnishment. The sums advanced to pay these small bills were loans which the garnishee might lawfully make, provided they were not to come out of the cotton, and they can not be construed as having done so, when more than the amount of their loan was paid back in money. The plaintiff has not had his rights acquired by the garnishment interfered with in the least by these transactions, and hence has no right to complain.

It follows from what we have said that the court has not erred in its conclusions nor in failing to find upon the issue submitted by the plaintiff, as there was no evidence to warrant them. The plaintiff's theory of this case would make the garnishee an insurer of the price of cotton so liable to fluctuations; a dealer in it to such an extent as to sell it when it could be best sold in order to raise a fund for the plaintiff, though the garnishee should be the sufferer thereby; a guarantee of the good faith of the other parties dealing with the defendant; and, finally, would pro-

hibit the garnishee from any money transactions with the defendant, though they did not deprive the plaintiff of any fund upon which he had a claim by reason of his garnishment. We do not think the law requires any such duties of the garnishee, or imposes any such restrictions upon him.

We think the judgment below is correct, and it is affirmed.

*Affirmed.*

Opinion delivered March 22, 1887.