## A. P. OVERBECK, Appellant, v. TRAVELERS INSURANCE COMPANY, Respondent.

### Kansas City Court of Appeals, May 5, 1902.

**Accident Insurance:** EXPOSURE TO UNNECESSARY DANGER: STANDING ON CAR PLATFORM. A traveler passing out of the car door and standing on the platform, as the train slows up for the station, with a view to alight when it stops, is guilty of a voluntary exposure to unnecessary danger or accident and can not recover on the accident policy stipulated against such exposure.

Appeal from Buchanan Circuit Court.—*Hon. W. K. James,* Judge.

AFFIRMED.

*Duncan & Utz* for appellant.

(1) In the interpretation of insurance policies with reference to ambiguous and uncertain language, the court will interpret it most favorably to the holder, see Norman v. Ins. Co., 74 Mo. App., near bottom of page 461; Brown v. Ins. Co., 45 Mo. 221; Burnett v. Ins. Co., 68 Mo. App. 343; Hoffman v. Accident Indemnity Co., 56 Mo. App. 301. (2) As to the question of voluntary exposure to unnecessary danger, will say that from the facts and circumstances adduced in evidence, plaintiff did nothing that any ordinarily prudent person would not have done under like circumstances, and in fact we believe he acted as the great majority of passengers do under like circumstances and that as the evidence showed in this case, it was necessary to be ready to alight promptly when the train comes to a stand, to avoid being carried past the station, and the court erred in his ruling on that point.

Ins. Co. v. Clark, 59 S. W. 7; Marx v. Ins. Co., 39 Fed. Rep. 321; Schneider v. Ins. Co., 58 Wis. 13.

*Vinton Pike* for respondent.

(1) In actions at law, where there is any evidence to support the verdict the appellate court will not review the facts, except in extreme cases where the preponderance of testimony is very great, and the verdict is so strongly opposed to all reasonable probabilities as to be the manifest result of mistake, bias, or prejudice: Spohn's case, 87 Mo. 74; Mc-Clanahan v. Payne, 86 Mo. App. 289; Snyder v. Railway, 85 Mo. App. 498; Finkelnberg's Appellate Practice, 112; Lesieur v. Zimmerman, 88 Mo. App. 662. (2) The danger was not hidden, unknown, or unlikely to happen. He voluntarily exposed himself to an unnecessary danger and the injury happened which there was reason to fear. Tuttle v. Ins. Co., 134 Mass. 175; Smith v. Acct. Assn., 104 Mich. 365. (3) The inconvenience of being carried beyond his destination did not make the danger incurred a necessary danger. Toledo, etc. v. Wingate, 143 Ind. 125; McDonald v. Railway, 87 Me. 466; Burgen v. Railway, 115 N. C. 673; Scheffler v. Railway, 96 Wis. 141. (4) Plaintiff was trying to leave a moving conveyance. As to this defense the words of the contract and not any rules of negligence are to be applied to the case. Ins. Co. v. Snowden, supra; Hull v. Equitable Acct. Assn., 41 Minn. 231.

BROADDUS, J.—This action is to recover on a policy of insurance against accidents. The plaintiff was insured in the defendant company against accidents, the policy being issued to him on the tenth day of September, 1900, in consideration of the payment by him of the amount of premium required. The defense was that by the terms of the policy of insurance it is provided that the same "shall not cover

accident, injury or liability resulting wholly or partly, directly or indirectly, from voluntary exposure to unnecessary danger or accident, injury or liability resulting directly or indirectly from entering or trying to enter or leave a moving conveyance using steam as a motive power, or happening while being in any part thereof not provided for occupation by passengers.'"

The parties submitted the case on the plaintiff's own evidence and the pleadings.

The plaintiff, who was a commercial traveler, testified that on the twenty-second day of November, 1900, he went aboard a Missouri Pacific railroad train at Rich Hill, Missouri, at about 5:50 o'clock a. m. to go to a station named Archie; that while en route he went to sleep but awoke in time to hear the call made for said station. At about the time the train whistled for the station he got up, turned up his coat collar, put on his gloves, took his grip and two bundles of advertising matter and walked to the front and sat down on a chair when the train slowed up for the station. He further stated that from the time he had taken up with the details related he thought the train was at the station and that after sitting on the arm of the chair a minute or two he got up and went out on the platform of the car, about which time, or at the time, the accident occurred. The train was then slowing down and while he was standing on the platform he lost his balance, fell and was struck by the train. Archie was a small station and witness accounted for his hurry to get off the train in this language: "It is a small station, only two or three hundred [inhabitants] and we had to get out of there and get off or we would be carried by." He further testified that the rate of speed at the time he fell could not have been over a mile or two an hour for the train only ran a half a car's length after he fell. On cross-examination the following questions were asked and answered:

"Q. You thought you were at the platform at Archie

when you started to leave the front seat of the car, and got through the door on the platform? A. Yes, sir, or very near it. Q. You expected to stop immediately to get off—now when you were inside the door you went out to get off because you supposed you were at the platform? A. Whenever the train stopped I would get off. Q. That was the reason you went through the door because you supposed you were at the platform? A. Yes, sir, or near the platform. Q. When you got out did you turn to your right or left? A. I did not turn; I stood on the platform. Q. And how come you to fall? A. It was a slippery morning and disagreeable and kind of misting rain and I simply lost my balance. Q. Why did you step out on the platform—what was the purpose of stepping out there? A. Because it was a small station and the train slowed for a minute only. Q. Your purpose in going through the open door was to get off the train on the platform? A. Whenever the train stopped. Q. How soon after you got through the door was it you fell? A. Oh, I had not hardly—I just stepped out on the platform. Q. When you fell? A. I stood there; I did not stand there. Q. You first stated to Mr. Utz (plaintiff's attorney) you had hardly stepped upon the platform until you fell, is that true? A. Yes, sir, I just simply stepped upon the platform."

It is contended upon the part of the plaintiff that he did nothing that any ordinarily prudent person would not have done under like circumstances, and that he acted as the great majority of passengers do under like circumstances, and that as the evidence showed it was necessary to be ready to alight promptly when the train came to a stand, to avoid being carried past the station, the court erred in its ruling.

The fact that plaintiff took a position on the platform of the car while it was in motion preparatory to alighting when the train should come to a standstill being conceded, raises the question whether such act was "a voluntary exposure to unnec-

essary danger or accident" on his part. As he was a traveling salesman, it is to be assumed that he knew that when he took up his position on the platform of the car that he was exposing himself to danger. And the railroad company had by a printed notice posted in the car warned its passengers of the danger of riding on the platform while the car was in motion, which notice plaintiff had seen. Every person of ordinary intelligence knows that it is dangerous to so ride. The fact that the plaintiff's evidence was to the effect that he anticipated from previous experience, or custom, that the stop the train would make at the station would be short was no justification and did not necessitate that he should incur the danger. As a passenger he had the right to demand of the conductor in charge that the train should stop such a reasonable length of time as would enable him to alight in safety. While it may, and sometimes does, occur that a railroad train does not stop a sufficient length of time at a station to allow a passenger to alight in safety, common experience teaches that as a rule they do.

Plaintiff stated that as a rule the habit at the particular station in question was to slow up only for a minute or so. If he meant that they did not stop, but only slowed up, he was attempting to get off the train when he fell and was injured; but if he meant that a stop was to be made only a minute or so, from his position in the car near the front he would have had sufficient time to have alighted after the car stopped. He was the only passenger to get off and no one was in his way. It is true, many travelers do place themselves on the platform of a car while it is approaching the station of their destination, and such travelers may be persons of ordinary care and caution in a general sense, but the act itself, notwithstanding, would be an act of negligence.

But we are not dealing with a question of negligence, but with one of contract. The plaintiff's contract with the

defendaut was that he would not voluntarily expose himself to
unnecessary danger or accident.    And in the event he did so
the contract was not to cover any accident, injury or liability
wholly or partly, directly or indirectly, from such exposure.
As we have seen, plaintiff's exposure to danger was unneces-
sary, and such being the case he was not entitled to recover.
See Ins. Co. v. Snowden, 45 Neb. 249, and Hull v. Equitable
Assn., 41 Minn. 231.

We think the trial court was clearly right in its rulings.
Cause affirmed.    All concur.