HALL v. NUNN ELECTRIC CO. et al.
(No. 958.)

(Court of Civil Appeals of Texas.　Amarillo.
April 5, 1916.　On Motion for Rehearing, April 26, 1916.)

1. GARNISHMENT ☞40—PROPERTY SUBJECT—
UNLIQUIDATED DAMAGES—BREACH OF CONTRACT.

Uncertain and unliquidated damages, resulting from breach of a contract, are not
subject to garnishment.

[Ed. Note.—For other cases, see Garnishment,
Cent. Dig. § 82; Dec. Dig. ☞40.]

2. CONTRACTS ☞280(5)—PERFORMANCE.

A contract to bore a well to supply 1,100
gallons of water per minute is not performed
by furnishing a well supplying 450 to 500 gallons per minute.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 1258; Dec. Dig. ☞280(5).]

**3. GARNISHMENT ☞13—POSITION OF PLAINTIFF.**

Plaintiff in garnishment steps into the shoes of his judgment debtor, and if nothing is owing the latter, the former is entitled to nothing; the writ appropriating whatever the garnishee owes at the time of the service of the writ and his answer.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 21–24; Dec. Dig. ☞13.]

**4. GARNISHMENT ☞109—TRANSFER BY DEBTOR BEFORE ANSWER—ACCRUING DEBT.**

A debtor cannot transfer an unmatured and accruing debt owing to himself between the service of the writ of garnishment and the answer of the garnishee to give his transferee title.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 227–229; Dec. Dig. ☞109.]

**5. GARNISHMENT ☞40—PROPERTY SUBJECT—CLAIM ON CONTRACT — EFFECT OF NONPERFORMANCE.**

Where a landowner contracted for the boring of an irrigation well to furnish 1,100 gallons of water per minute, and the well actually furnished 500 or less, such landowner was not subject to garnishment by the creditor of the contractors.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 82; Dec. Dig. ☞40.]

**6. GARNISHMENT ☞109 — EXTINCTION OF RIGHTS OF GARNISHOR.**

When the assignee of contractors to bore an irrigation well assigned to a third person its claim for the work and its alleged lien on the land securing the same, no lien or quasi lien being in existence against any fund in the landowner's hands on account of the contractors' failure of performance, the rights of the garnishing creditor of the contractors and their assignee were cut off.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 227–229; Dec. Dig. ☞109.]

**7. GARNISHMENT ☞50 — "POSSESSION" OF GARNISHEE—STATUTE.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 294, 295, providing in substance that if a garnishee has effects in his possession, and the court so adjudges, he shall deliver them to plaintiff to satisfy execution, etc., where contractors to bore an irrigation well left machinery on the landowner's premises, contemplating that it should be connected with the well in fulfillment of their contract with the landowner, who, however, did not claim the property or assume to do so under his contract, or to take control of it for any purpose, the landowner did not have such "possession" of the property as to subject him to writ of garnishment by the judgment creditor of the contractors.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 92; Dec. Dig. ☞50.

For other definitions, see Words and Phrases, First and Second Series, Possession.]

*On Motion for Rehearing.*

**8. CONTRACTS ☞198(6)—SPECIAL GUARANTY—CONSTRUCTION.**

Where the special guaranty of the equipment of an irrigation well stated that notes "are not to be delivered to the parties of the first part unless * * * they turn the well and machinery over to the party of the second part pumping 1,100 gallons of water regularly every minute," such guaranty was that the well should deliver 1,100 gallons of water, and not that the equipment over the well should be able to do so.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 872; Dec. Dig. ☞198(6).]

Error from District Court, Hale County; R. C. Joiner, Judge.

Garnishment proceedings by the Nunn Electric Company against L. C. Wayland, in which Ira W. Hall intervened. To review a judgment for the garnishee, the intervener brings error. Reversed and remanded.

Veale & Lumpkin, of Amarillo, and Cooper & Merrill, of Houston, for plaintiff in error. Kimbrough, Underwood & Jackson, of Amarillo, and Mathes & Williams and Graham & Graham, all of Plainview, for defendants in error.

HENDRICKS, J. On September 20, 1913, L. C. Wayland and wife entered into a contract in writing with Whyman Bros., a copartnership, by the terms of which they were to dig, and equip with machinery, an irrigating well upon Wayland's property, that would flow at least 1,100 gallons of water per minute, in consideration of which Wayland was to pay the sum of $3,400, and by the terms of the contract a lien was created on 160 acres of land (upon which the well was to be dug) to secure said sum of money.

On January 16, 1913, Whyman Bros. transferred their right and interest in said contract to W. I. Busby, as well as the lien securing the same, which transfer was recorded in the deed records of Hale county, Tex., where the land was situated. Subsequent to the assignment to Busby, the Hickcox-Whyman Engineering Company succeeded to all the interest and assets of Whyman Bros., continuing the well-drilling contracts of said firm, and the assignment to Busby, by Whyman Bros., was in reality in trust for the benefit of said engineering corporation, at that time in contemplation, and thereafter organized.

On June 20, 1913, the Nunn Electric Company, defendant in error, caused Wayland to be served with a writ of garnishment ancillary to a suit in the district court of Potter county, against Whyman Bros. and said Hickcox-Whyman Engineering Corporation, for the sum of $1,140, in which suit judgment was thereafter obtained for said sum.

On the 8th day of July, 1913, W. I. Busby, to whom said well-drilling contract had been transferred by Whyman Bros., transferred the indebtedness arising out of said contract to one Ira W. Hall, which was in reality for the benefit of the Foos Gas Engine Company, who was also a creditor of Whyman Bros. and said engineering corporation, to the amount of about $13,000; the assignment of said interest in said contract having been made as security for said indebtedness.

On July 27, 1913, L. C. Wayland made a settlement of said contract with Ira W. Hall, by the terms of which Hall transferred the machinery which was to go over the well under the terms of the contract between Wayland and Whyman Bros., and Hall also released the lien upon said quarter section of land; Wayland agreeing to pay for said ma-

chinery and the release of said lien the sum of $2,050. By the terms of this agreement between Hall and Wayland, the sum of $1,-140 was to be placed in the hands of the district clerk of Potter county, and by him held until the disposition of this suit and then paid to the party—that is, the Nunn Electric Company or Hall—entitled to the same.

This agreement between Hall and Wayland was made with the concurrence of the Nunn Electric Company, subject to the condition as to the payment of the $1,140 to the clerk of the district court of Potter county, to abide the litigation as to the ownership of said fund.

The contract between Wayland and Whyman Bros., as to the digging and completion of the well, provided that $400 cash, and certain notes, evidencing the balance of the $3,400, should be deposited in the Citizens' National Bank of Plainview, Tex., in escrow, "and there to be held until said improvements are completed according to the terms of this contract and plans and specifications referred to as a part thereof," etc. Connected with the specifications this special guaranty by Whyman Bros. was:

"Equipment is guaranteed to deliver 1,100 gallons per minute, measured over a weir into the ditch, and to be satisfactory in every respect, which means that notes are not to be delivered to parties of the first part unless by February, 1913, they turned the well and machinery over to the party of the second part, pumping 100 [1,100] gallons of water regularly per minute."

Hall, who was the assignee of the contract from Busby, for the benefit of the Foos Gas Engine Company, intervened in the garnishment suit, claiming the $1,100 deposited with the district clerk of Potter county, setting up the assignment of the Wayland well-drilling contract to Busby, the assignment by Busby to him, and asserting that at the time the writ of garnishment was served upon Wayland, for the purpose of impounding the money under the Wayland-Whyman Bros. contract, "the amount due under the terms of said contract was uncertain and could not be ascertained," and that said well-drilling contract by Whyman Bros. had never been fulfilled and completed.

The garnishee, Wayland, denied indebtedness, or that he had effects in his possession belonging to Whyman Bros. or the engineering corporation at the time of the service of the writ of the filing of the answer, or that he knew of any other person so indebted, or so possessed of effects; also setting up the assignment by Whyman Bros. to Busby, by Busby to Hall, and his original contract with Whyman Bros., their noncompliance with same and a settlement with Hall for the machinery and a release of his land— Wayland testifying that the conveyance of the machinery and the release of his land was, in the main, the actuating consideration of said settlement, for which he paid the sum of $2,125. He said, when they quit work on the well in April, 1913, the well was in an incomplete condition and would only pump from 450 to 500 gallons per minute; that while he did not claim any damages in said settlement with Hall, he considered that he was entitled to the same as the contract specified the well would be completed by February 1, 1913, and he had prepared his land, and was "knocked out of a crop he might have irrigated" for that year. He said, "All I figured in the settlement was that the well was practically worthless to me, and the machinery would possibly be worth the money if I could buy it;" that he had worked twice on the well since he had settled with Hall and the best he was able to get out of it was between 800 and 850 gallons per minute. "I have used it a short time since then. It is questionable whether I will throw it away or use it, as there is more expense attached to it, the way it is, than profits. The engine is all right, but the pump is no good and the well is no good." He testified he did not use the well up to the time he made the settlement with Hall and considered that he was not legally bound to accept the same but did say he was "going to pay them according to contract and let them take everything off."

Busby, Whyman, and Hickcox, all officers and stockholders of the engineering corporation, were witnesses in behalf of the plaintiff, the Nunn Electric Company, and were never asked, nor testified as to the fulfillment of the contract between Whyman Bros. and Wayland for the digging and equipment of said well. The trial court, without a jury, found for the garnishee.

Hall, the intervener, plaintiff in error herein, assigns that the evidence shows that at the time the writ of garnishment was served and the filing of the answer, if garnishee Wayland owed Whyman engineering corporation any sum, the same was an indeterminable interest and not subject to garnishment. The Nunn Electric Company denies this contention, but, if it is true, the argument is that the debt thereafter became determinable, and, furthermore, the evidence warranted the court in finding that "Wayland, the garnishee, had in his possession effects (the engine, pump, etc.) belonging to Hickcox-Whyman Engineering Corporation at the time the writ was served; and the $1,140.55 having been paid into court by agreement, between all parties concerned, took the place of such effects and plaintiff was entitled to recover."

[1] Damages resulting from the breach of a contract in their nature uncertain and unliquidated are not subject to a garnishment.

"The sound basis for the rule is that the garnishee is required by the statute to answer under oath 'What, if anything, he is indebted' to the defendant; and it is unreasonable that he should be compelled to swear to the amount of the demand which is not capable of being ascertained by a calculation made from data furnished by the contract itself considered in con-

nection with the breach." Grocer Co. v. Texas & Pacific Ry. Co., 95 Tex. 488, 68 S. W. 266, 59 L. R. A. 353.

Chief Justice Gaines further said in that case, quoting from Hugg v. Booth, 24 N. C. 282:

"The attachment could only be served on one 'indebted'; and the judgment to be 'upon his examination only'—which yet more clearly evinces that it could only apply to such demands, of which the garnishee could conscientiously and with reasonable certainty state the amount on his oath, and not to a case of uncertain damages, of which there is no standard until assessed by a jury."

Also see Medley v. American Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86; McClellan v. Routh, 15 Tex. Civ. 344, 39 S. W. 607; American & Eng. Enc. Law, vol. 14, 765; Lumber Co. v. Surety Co., 35 Tex. Civ. App. 346, 80 S. W. 238; Mensing v. Engelke, 67 Tex. 537, 4 S. W. 202; Eikel v. Frelich, 1 White & W. Civ. Cas. Ct. App. § 1117; Holmes & Co. v. Pope & Fleming, 1 Ga. App. 338, 58 S. E. 281; Southern Flour & Grain Co. v. Northern Pacific Ry. Co., 127 Ga. 626, 56 S. E. 742, 9 L. R. A. (N. S.) 853, 119 Am. St. Rep. 356, 9 Ann. Cas. 437; Drake on Attachment (7th Ed.) par. 517 et seq.

[2] The testimony shows without contradiction that at the time of the service of the writ of garnishment upon Wayland that, viewing the contract, as to its fulfillment, between Whyman Bros., as to the digging and completion of the well, there was a lack of substantial performance upon the part of Whyman Bros. and their successor, the engineering corporation, that Wayland was not indebted at said time. There seems to be no attempt to show, though plaintiff made the officers of the engineering company its witnesses, that there was any compliance by said corporation of said contract, according to its terms. Wayland denied indebtedness or that he had effects in his possession, setting up the contract between him and Whyman Bros., averring noncompliance. The contract is susceptible of the construction that 1,100 gallons of water per minute, over a weir, running into the ditch should be regularly afforded from the well under construction, before any liability whatever attached to Wayland. A well pumping 450 to 500 gallons per minute is not such a well. The engineering corporation seems to have totally abandoned the project in the condition mentioned.

[3] It is a fundamental rule that the plaintiff in garnishment steps into the shoes of his judgment debtor—if nothing is owing to the latter, the former of course, is entitled to nothing. A writ of garnishment appropriates whatever the garnishee owes at the time of the service of the writ and at the time of the garnishee's answer.

[4] It is true that it is held in this state that a debtor cannot transfer an unmatured and accruing debt, to some third person between the service of the writ and the answer of the garnishee; and, as in the actual case, if the defendant assigned rent not yet due accruing from a tenant after the latter was served with the writ and before the garnishee's answer, the purchaser took nothing. Gause v. Cone, 73 Tex. 240, 11 S. W. 162. However, in the above case, the garnishee was really indebted to the garnishor's debtor. In this case, at least at the time the writ of garnishment was served, we can see no obligation of indebtedness from Wayland to Whyman Bros. or the engineering corporation. It may be said that if Wayland was not indebted to Whyman Bros. or the engineering corporation, that Hall, who took the assignment of a purported chose in action, received nothing. Hall received a transfer, technically, of the purported lien on Wayland's property, and, while it is true that Wayland might have removed the lien in an action against the parties, according to this record, it was a matter with Wayland entirely optional, whether he should pay any sum or litigate. On account of the fact that he proposed to pay something, in order to get rid of the lien on his property and acquire the machinery and well in the condition as stated, does not militate against the legal proposition that, according to our conception of this record, he was not required to respond.

Chief Justice Willie said, in the case of Mensing v. Engelke, 67 Tex. 537, 4 S. W. 204:

"It is a cardinal principle in the law of garnishment that the service of the writ cannot have the effect of changing the nature of a contract between the defendant and the garnishee."

[5] We think no lien ever attached by virtue of the levy of the writ of garnishment upon any fund purported to have been owing by Wayland to Whyman Bros. or the engineering corporation for the reason that no such fund, in legal contemplation, was in existence.

[6] When Hall, of the Foos Gas Engine Company, received an assignment of the lien, and the purported chose in action from the engineering corporation, no lien or quasi lien being in existence against any fund, we think the rights of the garnishor, in law, were cut off.

[7] Appellees' third counter proposition quoted, asserting that the evidence warranted the court to find that Wayland, the garnishee, had in his possession certain effects belonging to the engineering corporation, and that the money represented such effects, is not sustained by plaintiff in error's statement sustaining such an enunciation.

The following is the statement of the testimony, marshaled on this proposition:

"Wayland testified: 'And the original contract was abandoned and declared forfeited some time between May 2d and May 20th. At the time the contract was declared forfeited there was no

agreement and I claim that whatever equities were in there I got by my transfer. At the time of making the settlement Mr. Hall sold me the machinery that I considered was on the place, the engine that had been installed and everything that was on the place. I didn't make any claim to it myself and I didn't file any claim against them.' Hall testified: 'Besides the 40 H. P. engine and pump, there were a few other things around there that amounted to a few dollars; the engine was shipped by the Foos Gas Engine Company. It was not shipped to Dr. Wayland. * * * It was shipped to one of them [Whyman Bros. or Hickcox-Whyman Engineering Company] and delivered to them. The contract of settlement between Hall and Wayland purported to 'transfer and convey to Wayland from Hall said machinery, engine pump, etc., and provided that the money, $1,140, should be paid into court to be held subject to this suit. It was admitted upon the trial that plaintiff knew of the settlement arranged, and agreed it might be made if said money was so paid into court."

There is really no denial by the garnishor, the Nunn Electric Company, of the garnishee's answer, asserting that he had no effects in his possession belonging to the defendant debtor; simply an assertion that the money deposited in court represents such effects.

The character of possession, under the authorities, imposing the responsibility upon the garnishee to a writ, is rather hard to define. Articles 294 and 295, Vernon's Sayles' Civil Statutes, contemplate that if the garnishee has effects in his possession, and the court so adjudged, that he shall deliver the same to the sheriff for the purpose of satisfying an execution; and if he fails to deliver after it having been adjudged that he has such effects in his possession, he is liable for contempt. Rood on Garnishment, §§ 53 and 54, asserts that actual possession is not necessary, provided the personal property is within the power of the garnishee. Wade on Attachment, vol. 2, § 412, says:

" 'Control' guides one to a more definite comprehension of the intention of the statute than the word 'possession.' It is understood to mean that the party having control has some power to direct the disposition of the property in question and we are not required to look critically into the question of possession."

We are not disposed to attempt a correct enunciation of what is meant by possession under this statute, but we think that appellee does not show that Wayland had such possession contemplated by the above articles as would charge him as a garnishee. The property was simply left upon his land, and while it was contemplated by Whyman Bros. and the engineering corporation that said machinery would be connected with the well, as a fulfillment of their contract with Wayland, however, Wayland was not claiming the property, or assuming to do so under said contract, or assuming control of the same for any purpose; at least defendant in error's statement does not show the fact.

Wayland's statement that he would have

183 S.W.—2

paid according to the contract and allowed the judgment debtors to remove the machinery off the land is merely an after declaration of an undisclosed intention, which is not a part of the contract as a matter of law. He may or may not have done so, and according to our interpretation of the obligatory features of the contract, he was not required to pay anything.

It is assigned that the trial court erred in taxing the fee against intervener, in favor of the garnishee, for the reason that the answer in garnishment was controverted. In view of another trial, such an assignment is probably immaterial. However, article 307, Vernon's Sayles' Revised Civil Statutes, and decisions annotated and cited thereunder, will afford a criterion in the event of a further contest and judgment.

Unless the evidence upon another trial is stronger upon the question of possession by Wayland, of the machinery, than exhibited by appellee in this record, we think Hall, the intervener, should have a judgment.

The cause is reversed and remanded.

### On Motion for Rehearing.

[8] We differ fundamentally with the defendant in error, Nunn Electric Company, as to the meaning of the special guaranty, quoted in the original opinion, bearing upon the obligation of Whyman Bros. and their successor, the engineering corporation, and the rights of Wayland, arising upon the well contract. The contention is made that the guaranty is relevant only to the ability and capacity of the equipment over the well as to the delivery of "1,100 gallons of water per minute, measured over a weir into a ditch," and that said contract is devoid of any obligation that the well of itself shall have such capacity. The contract on its face rather interprets itself; as to the guaranty of the equipment it further says that it "means that notes are not to be delivered to the parties of the first part unless * * * they turn the well and machinery over to the party of the second part, pumping 1,100 gallons of water regularly every minute."

As a practical consideration, unless the well was developed to the capacity mentioned, the test could never be made that the pump and equipment could deliver 1,100 gallons of water per minute "measured over a weir into a ditch"; and it would mean, construed in its entirety, as it reads, that the well, as to its capacity, was to be turned over affording the water stated.

But, yielding the point, and assuming that at the time the writ of garnishment was issued, that Wayland owed something, by virtue of the contract, he, of course, did not owe the notes in the hands of the escrow. A 450 or 500 gallon well is not a 1,100 gallon well. Appellee would apply the rule of the measure

of damages, as applied to a building contract when abandoned, or violated by a building contractor, before the completion of the building. The record in this case excludes the idea that a 1,100 gallon well per minute could be developed by Wayland, the owner of the land when left in the inadequate condition stated—an 850 gallon well, after Wayland settled with Hall, is the testimony as to the limit of its development. Appellee was upon notice by the intervention of Hall, setting forth portions of the answer of the garnishee as to the noncompliance of the contract by the engineering corporation, months before the trial of this case; but no effort whatever was made to produce testimony in contradiction.

It must be borne in mind that the garnishee is required to "answer upon oath what, if anything, he is indebted to the defendant." Article 274, R. O. S.

The contract in this case contemplated a completed job with a depth of the well of 120 feet for $3,400, providing for a rebate of $3 per foot, if the lower stratum of water is struck at a less depth and an additional amount at the same rate if deeper. However, if this well could not be developed to a 1,100 gallon well, according to contract, could you apply the rule of what it would cost to finish it? This record excludes, rather than it suggests, that Wayland could ever get what he contracted for; hence, could you say that $3,400 entered into his obligation as an element of recovery against him, or $3 per foot as applied to the character of improvements? Would the contract as to the amount of recovery or demand furnish any data upon which the same could be calculated?

The cases of Capes v. Burgess et al., 135 Ill. 61, 25 N. E. 1000, and Hugg v. Booth, 24 N. C. 282, quoted from, by Chief Justice Gaines, in the case of Grocer Co. v. Railway Co., 95 Tex. 487, 68 S. W. 265, 59 L. R. A. 353, and relied upon as authority by him, in support of the doctrine announced in the Texas case, upon analysis of the contracts and the essential facts embodied in those cases, and the real holding of those courts, bearing a strong analogy to the contract and the question involved in this record. The North Carolina case is peculiarly applicable because the statute is the same; the construction of the Illinois Supreme Court makes their statute in effect the same.

We are following what we conceive to be the trend of the logic deducible from the Supreme Court case, supra, in holding that the character of damages, if any recoverable, is of such an unliquidated nature as not to be subject to garnishment.

The contention is further made, as upon the original hearing, that the unliquidated damages were liquidated previous to trial, by the agreement between Hall and Wayland.

"It was said, however, that the attachment bound after the damages had been liquidated by the award of the jury. The obvious answer to this proposition is that Saylor assigned his claim to Selheimer before the award." Selheimer v. Elder, 98 Pa. 158, 159.

The motion for rehearing is overruled.