CHARLES CAPES, for use, etc.,

*v.*

ROBERT BURGESS *et al.*

*Filed at Springfield November 1, 1890.*

1. GARNISHMENT—*in what cases—generally.* The remedy by garnishment is statutory, and the question of its application to any given case or class of cases is therefore purely a matter of statutory regulation. The statute gives this remedy for debts owing from the garnishee to the judgment debtor, and to reach effects or estate of the judgment debtor in the possession, custody or charge of the garnishee.

2. A debt or obligation to be subject to garnishment must be such as to be recoverable in an action of debt, or *indebitatus assumpsit.*

3. SAME—*the term "credits"—defined.* The choses in action and credits named in sections 5 and 7 of the Garnishment act are to be limited to debts, in the strict and technical sense of that term. The term "credit" is there used as the correlative of debt.

4. SAME—*as to unliquidated damages.* Unliquidated damages are not liable to garnishment. They are not a debt within the meaning of the statute relating to garnishment.

5. APPEAL—*finding of facts by the Appellate Court—omission to do so—presumption.* Where the Appellate Court reverses a judgment of the trial court without reciting any finding of the facts, it must be presumed that its judgment was not the result, in whole or in part, of any finding of the facts different from that of the trial court, but that the reversal was for errors of law appearing in the record.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. KERRICK, LUCAS & SPENCER, for the plaintiff in error:

The proceeding by garnishment is strictly a statutory proceeding, and to determine the precise limitations within which the writ may be used, recourse must be had to our own statute. *Insurance Co.* v. *Conner,* 20 Ill. App. 308.

The statute being remedial, should be liberally construed. *Jackson* v. *Warner,* 32 Ill. 339; *Hadley* v. *Morrison,* 39 id. 399;

62      CAPES *v.* BURGESS *et al.*

Brief for the Defendants in Error.    Opinion of the Court.

*Railroad Co.* v. *Dunn,* 52 id. 262; *Railroad Co.* v. *Heflin,* 65 id. 367; *Conkling* v. *Ridgely,* 112 id. 36; *Railroad Co.* v. *Crane,* 102 id. 249.

As to the meaning of the words "credits," "debts," "indebtedness," etc., see *Knox* v. *Insurance Co.* 9 Conn. 483; *Insurance Co.* v. *Field,* 45 Pa. St. 131; *Lenox* v. *Howland,* 3 Caines, 323; *Fisher* v. *Consequa,* 2 Wash. C. C. 382; *Corland* v. *Cunningham,* 37 Pa. St. 228; *Bansman* v. *Smith,* 2 Ind. 374; *Jones* v. *Buzzard,* 2 Ark. 446; *Roelfson* v. *Hatch,* 3 Mich. 278.

As to what is embraced in the words "choses in action," see *Insurance Co.* v. *Field,* 45 Pa. St. 131; 2 Black. 396; *Gillett* v. *Fairchild,* 4 Denio, 80; Anderson's Law Dict.

Messrs. EDWARDS & EVANS, for the defendants in error:

That unliquidated damages can not be garnisheed, see Drake on Attachments, secs. 544, 548, 549; Waples on Attachments, 197, sec. 3; *McKean* v. *Turner,* 45 N. H. 203; *Gore* v. *Varnell,* 58 id. 78; *Hugg* v. *Booth,* 2 Ind. 285; *Deaver* v. *Keath,* 5 id. 274; *Webster* v. *Steele,* 75 Ill. 544; *May* v. *Baker,* 15 id. 89.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

Haynes, Gordon & Co., having obtained judgment in the Circuit Court of McLean county against Charles Capes for $2050 and costs, and having had execution issued thereon and returned unsatisfied, sued out a writ of garnishment and caused Robert Burgess and Charles Burgess, copartners doing business under the firm name of Burgess Brothers, to be summoned as garnishees. Said garnishees, by their answer, denied having in their possession, custody or charge, any lands, goods, chattels, moneys, choses in action, credits or effects of said Capes, or being in any way indebted to him, but admitted, in answer to specific interrogatories in that behalf, that on or about the 8th day of March, 1886, they sold and delivered to said Capes the imported stallion "Pride of Maplethorp," with

a statement or warranty in writing as to his qualities, said statement of warranty being as follows :

"*Bill of sale of 'Pride of Maplethorp.'*

"This is to certify that we have sold the imported shire stallion 'Pride of Maplethorp' to Mr. C. T. Capes, of Pontiac, Ill.

"This also certifies that the above mentioned stallion, 'Pride of Maplethorp,' was imported from England on the steamship *Lake Huron*, by the Burgess Bros., of Wenona, Ill.

"This also certifies that the above mentioned stallion is free from all hereditary diseases, and is a breeder; and in case said stallion proves contrary in a reasonable time,—say two years,—if no mishap ally him, we agree to take said stallion back and furnish the buyer another stallion of same value as the above stallion, provided the said stallion, 'Pride of Maplethorp,' is returned to us in good condition.

BURGESS BROS., *Wenona, Ill.*
"Dated Wenona, *March 8, 1886.*"

Said garnishees further answered denying that there had been any breach of said warranty, or that said stallion had proved contrary thereto, and denying that said Capes had offered to return said stallion to them in good order. The judgment creditors thereupon filed their replication alleging that said garnishees had not truly discovered the moneys, choses in action, credits and effects of said Capes in their hands, custody and charge, or due and owing from them to him, and the issues thus formed being tried by a jury, a verdict was rendered finding the issues in favor of the plaintiff, Capes, and assessing his damages at $1375. In answer to questions of fact submitted to them for a special finding, the jury also found, that said stallion, at the time of his sale to said Capes by said garnishees, was not a fair average breeder; that if he had been so, his reasonable value would have been $1600, but that not being a fair average breeder, his value was actually only $225. The court, thereupon, after denying the garnishees'

motion for a new trial, gave judgment in favor of said Capes, for the use of said Haynes, Gordon &. Co., against said garnishees, for said sum of $1375 and costs. Said judgment was taken by said garnishees to the Appellate Court by appeal and was there reversed, no order being entered remanding the cause to the Circuit Court for a new trial. The judgment of the Appellate Court is now brought to this court by writ of error.

The Appellate Court having reversed the judgment without remanding the cause, and without reciting in its final order any finding as to the facts, it must be presumed that its judgment was not the result, in whole or in part, of any finding of the facts different from the finding of the trial court. *Coalfield Co.* v. *Peck*, 98 Ill. 139; *Thomas* v. *Fame Ins. Co.* 108 *id.* 91. We must assume, therefore, that the Appellate Court found all the facts as they were found by the jury, but reversed the judgment solely for errors of law appearing in the record. The judgment of the Appellate Court being conclusive as to the facts, the only question which can arise here is, whether the facts as alleged by the judgment creditors and as found by the verdict are sufficient to sustain a judgment against the garnishees.

The only issues raised by the pleadings upon which any evidence was offered were, as to whether the warranties upon which the stallion in question was sold by Burgess Brothers to Capes had been broken, and as to the amount of damages sustained by Capes by reason of such breaches of warranty. The verdict of the jury has conclusively established the fact, so far as this record is concerned, that said warranties have been broken in manner and form as charged, and that Capes is entitled to recover the sum of $1375 as his damages for such breaches. The question remains, however, whether the judgment creditors of Capes can, by process of garnishment, litigate said claim for unliquidated damages and subject it to the payment of their judgment, and that is a question of law which is open for review in this court. The Appellate Court

decided this question in the negative, and after maturely considering the arguments of counsel submitted here, we are disposed to concur in the conclusion reached by that court.

The remedy by garnishment is statutory, and the question of its application to any given case or class of cases is therefore purely a matter of statutory regulation. In other States, whenever the question has arisen, the courts, basing their decisions, of course, upon the peculiar provisions of their own statutes, have held that a person whose liability to the principal debtor was for unliquidated damages, could not be charged as garnishee. The rule is accordingly laid down by the leading text-writers on the subject of Garnishment, that in no case where the claim of the defendant against the garnishee rests in unliquidated damages can the garnishee be made liable. Drake on Attachments, sec. 548; 2 Wade on Attachment and Garnishment, sec. 447; Waples on Attachment and Garnishment, 197, and authorities cited in notes.

We are aware of no inherent obstacle in the way of such legislation as would place within the reach of this process claims for unliquidated damages, arising either out of breaches of contract or of torts. The fact however that both the legislation and judicial decisions in the other States have been uniformly against it, establishes at least a reasonable presumption that to do so would not be in harmony with sound principles of public policy, a presumption which, in our judgment, should have its due weight whenever an attempt is made to give construction to our own statute on the subject.

The first section of our statute on Garnishment provides for suing out a writ of garnishment by a creditor who has obtained judgment and whose execution has been returned unsatisfied, by filing an affidavit that the defendant has in his possession no property liable to execution within the knowledge of the affiant, and that the affiant has just reason to believe "that any other person is indebted to such defendant, or hath any effects or estate of such defendant in his possession, custody

or charge." This provision clearly indicates an intention to subject to the process of garnishment two classes of assets and two only, viz, 1. debts owing from the garnishee to the judgment debtor, and, 2. effects or estate of the judgment debtor in the possession, custody or charge of the garnishee. In the subsequent portions of the act the distinction between these two species of assets is accordingly kept up, and they are subjected to different modes of procedure and necessitate entirely different forms of judgment.

The fifth section requires the creditor to file in writing the allegations and interrogatories upon which he shall be desirous of obtaining and compelling the answer of the garnishee "touching the lands, tenements, goods, chattels, moneys, choses in action, credits and effects of such defendant, and the value thereof, in his possession, custody or charge, or from him due and owing to said defendant at the time of the service of the writ or at any time after, or which shall or may thereafter become due." The same language, in substance, is repeated in section 7, where provision is made for a traverse of the answer by the creditor when he is dissatisfied with the discovery made by the garnishee.

It is claimed that because the language here used applies not only to the choses in action and credits of the defendant in the custody, possession and charge of the garnishee, but also to such as are due and owing or are to become due from the garnishee to the defendant, every species of liability from the former to the latter is thereby brought within the reach of the writ. This, in our opinion, by no means follows. It is true the distinction between the two classes of assets sought to be reached is not here so sharply drawn as in section 1, nor would it seem necessary that it should be. The classes of claims to which the writ was intended to apply having been once clearly stated, and that too in the section under which the proceeding is set in motion and jurisdiction in respect to it conferred, it will be presumed that the distinctions thus

created and the limitations thus imposed were intended to be preserved and followed in the subsequent portions of the act, unless language is used which can not be interpreted in harmony with such presumption.

It certainly does no violence to the language of sections 5 and 7 to hold that the choses in action and credits due and owing or to become due from the garnishee to the defendant there mentioned were intended to be limited to debts in the stricter and more technical sense of that word. Such is undoubtedly the proper meaning of the term "credits." As said by Mr. Drake: "The term credit, in this connection, is used in a sense in which it is understood in commercial law, as the correlative of debt. Whenever, therefore, there is a credit there is a debt, and without a debt there can be no credit." Drake on Attachments, sec. 544. Nor can it be said, in any proper sense, that a chose in action, other than a debt the amount of which is liquidated, is due and owing or capable of becoming due. An obligation can be said to be due only when it is of such character that the debtor may and ought to discharge it at once by payment, and that can be done only where the amount of the obligation is ascertained or is capable of being ascertained by computation. Where the liability consists of damages which are unliquidated and uncertain in amount, and can be rendered certain only by the judgment of a court, such liability can not be said to be due or to be capable of becoming due until judgment has been rendered. In such case the party liable is under no obligation to pay, nor can he discharge himself by payment, until his liability has been ascertained and fixed by judicial proceedings. It would thus seem that the language of sections 5 and 7, when properly considered, must be held to limit the claims against a garnishee capable of being reached by this proceeding, to indebtedness the amount of which is liquidated, and does not apply to liabilities for unliquidated damages. These sections therefore are entirely in harmony with section 1.

The act in relation to Garnishment and the 21st section of the Attachment Act are *in pari materia* and should be construed together. If there was any substantial doubt then as to the construction to be placed upon said sections 5 and 7 of the former act, the legislative intent would seem to be clearly and unmistakably expressed in section 21 of the latter act. It is there provided that in suits commenced by attachment, if the sheriff is unable to find sufficient property of the defendant to satisfy the writ, he shall summon the persons mentioned therein as garnishees, and all other persons whom the creditor shall designate "as having any property, effects, choses in action or credits in their possession or power belonging to the defendant, or who are in any wise indebted to the defendant, the same as if their names had been inserted in the writ." This section is in complete harmony with the first section of the Garnishment Act, and furnishes additional ground for the conclusion that, in the subsequent and perhaps more obscure language of the latter act, it was the legislative intent to limit the application of the act to such liabilities of the garnishee to the attachment or judgment debtor as may properly and technically be termed debts.

It may also be noticed in further confirmation of this view, that in section 19 of the Garnishment Act, the only section of the act in which the judgment to be rendered against the garnishee is spoken of in such terms as to indicate the nature of the liability for which it may be rendered, such liability is designated as a "debt."

The test applied by many of the courts to a liability which may be made the subject of garnishment is, that it must be "a legal debt due or to become due—a debt for which the defendant might maintain an action of debt or *indebitatus assumpsit*." Drake on Attachment, sec. 545, and authorities cited. The liability sought to be reached here is for damages for breaches of certain warranties as to the qualities of the

stallion sold by the garnishees to the defendant. These damages were in their nature uncertain in amount and incapable of being liquidated except by the judgment of a court. They constituted a liability from the garnishees to the defendant for which a special action of assumpsit would doubtless lie, but they were in no proper sense a debt, nor could they have been recovered in an action of debt or of *indebitatus assumpsit.* They were therefore not within the reach of the process of garnishment, and the judgment of the Appellate Court reversing the judgment of the Circuit Court is correct and will be affirmed.

*Judgment affirmed.*