# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### HOOSIER VENEER CO. v. TRUSTS & GUARANTEE CO., Limited.*

(Circuit Court of Appeals, Seventh Circuit. December 22, 1921. On Petition for Rehearing July 5, 1922.)

No. 2931.

1. **Attachment ⬤⟞1—Immaterial whether indebtedness exists, when attachment is in aid of pending action.**

    Under Illinois Attachment Act § 1, entitling a creditor to an attachment against property of his debtor, and section 31, authorizing attachments in aid of actions of assumpsit, debt, covenant, trespass, or trespass on the case, when the attachment is issued in aid of a pending action, it is immaterial whether there is any relation of creditor and debtor, or any indebtedness.

2. **Attachment ⬤⟞4—Attachments in aid of pending actions not limited to actions on indebtedness.**

    Illinois Attachment Act, § 31, authorizing attachments in aid of pending actions of assumpsit, debt, covenant, case, or trespass on the case, on filing of bond and affidavit showing right to attachment under section 1, does not limit attachments in aid of pending actions to actions on an indebtedness in which original attachment is authorized under section 1, but merely requires that one of the grounds of attachment specified in section 1, such as nonresidence, fraudulent transfer, etc., shall exist.

    On Petition for Rehearing.

3. **Appeal and error ⬤⟞884—Defendant's recognition of pendency of suit held to preclude contention that no suit was pending, so as to authorize attachment.**

    Where writ of attachment and notice given defendant thereof recited pendency of action, and defendant, in removing to the federal court, alleged that the suit was an action at law, and otherwise referred to the proceeding as an action, and moved to quash the attachment on grounds dependent on the interpretation of the complaint, or declaration, and District Court quashed the attachment and dismissed the "suit," defendant cannot in the appellate court contend that no suit was commenced, so as to authorize an attachment under Illinois Attachment Act, § 31, because no summons or capias was issued.

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 43 Sup. Ct. 97, 67 L. Ed. —.

283 F.—1

4. Attachment ☞1—Held maintainable as original attachment, rather than attachment in aid of pending action.

An attachment against a nonresident in an action for breach of contract *held* maintainable as an original attachment, under Illinois Attachment Act, § 1, rather than an attachment in aid of a pending action, under section 31.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Hoosier Veneer Company against Matthew Wilson and others, in which the Trusts & Guarantee Company, Limited, as executor of defendant named, was substituted as defendant. Judgment quashing the attachment and dismissing the suit, and plaintiff brings error. Reversed and remanded, with directions.

The plaintiff in error, citizen of Indiana, commenced this action of assumpsit in the superior court for Cook county, Ill., against Matthew Wilson, of Ontario, Canada, for damages laid at $200,000, arising upon the latter's alleged breach of a contract to convey to plaintiff in error certain lands in Arkansas. The declaration alleged the execution of the contract its subject-matter, consideration, terms, plaintiff in error's partial, and its willingness and ability for complete, performance, and Wilson's failure, refusal and inability to perform. It also set out—probably unnecessarily, but in evidentiary support of Wilson's default—the commencement of an action by one Spry against Wilson in an appropriate court of Arkansas, wherein the latter was adjudged liable for specific performance of a contract with the former for the conveyance of the identical lands which are the subject-matter of the contract in the here pending suit.

In the action thus commenced in Cook county, plaintiff in error caused an attachment to be issued, pursuant to which Wilson's property was seized. Thereupon Wilson removed the cause to the United States District Court for the Northern District of Illinois. His death, and its suggestion of record, brought the defendant in error, the Trusts & Guarantee Company, Limited, as representative and successor, into the case, and upon special appearance it moved to quash the attachment issued by the state court because: (1) It was issued without warrant or authority in law, being "upon an alleged cause of action under which the damages are unliquidated"; (2) no affidavit "for attachment in aid," as required by the laws of Illinois, was filed; and (3) the clerk of the Illinois court issued the writ without authority of law, etc.

Through this writ of error, review of the action of the District Court in granting the motion to quash is sought.

Carl R. Latham, of Chicago, Ill., for plaintiff in error.

Don Kenneth Jones, of Chicago, Ill., for defendant in error.

Before ALSCHULER and EVANS, Circuit Judges, and GEIGER, District Judge.

GEIGER, District Judge (after stating the facts as above). [1] Two sections of the Illinois attachment statute (Hurd's Rev. St. 1921, c. 11) are involved in the case:

Section 1 provides that in any court of record having competent jurisdiction, "a creditor may have an attachment against the property of his *debtor*, * * * when the indebtedness exceeds $20," in any one of the following cases: (Here are enumerated nine grounds, common in attachment statutes; e. g., nonresidence, concealment, fraudulent transfers, etc.) Procedure on behalf of the creditor, by affidavit

setting forth the nature of the *indebtedness* above credits and set-offs, is prescribed.

Section 31 provides that:

"The plaintiff, in any action of *assumpsit, debt, covenant, trespass,* or *trespass on the case,* having commenced, * * * by summons or capias may, at any time pending such suit * * * sue out an attachment, * * * which * * * shall be entitled in the suit pending and be *in aid* thereof; and such proceedings shall be thereupon had as required * * * in original attachments as near as may be."

As a step to obtain the attachment, the section prescribes the filing by plaintiff of "a sufficient bond and an affidavit," hereinafter noted. Two provisos are found in this section: (a) That it shall not apply where the defendant has been arrested and has given special bail; (b) that in actions of "trespass" or "trespass on the case" the issuance of the writ must be conditioned precedently upon application to a judge or master, with examination under oath, "concerning the cause of action," whereupon such judge or master, by indorsement upon the writ, shall *limit the damages* "for which the writ shall issue." Statutes of Illinois, 1833–35, p. 82 (act of 1833); Illinois Revised Statutes, 1845, p. 63 (act of 1843); Statutes of Illinois, 1869–71–72, p. 176 (act of 1872); Statutes of Illinois, 1895, p. 21 (act of 1895).

These two sections, in their purpose to deal with the remedy by attachment, may be thus characterized: Section 1 grants the remedy, *as original* by a *creditor* against his *debtor* in respect of an *indebtedness.* Section 31 grants the remedy, as "provisional," or "in aid," in five technically well-defined forms of actions.

Therefore, had the plaintiff herein sought to proceed by original attachment, it might be inquired whether the parties sustained the relation of "debtor" and "creditor," or whether the proceeding was sued out with respect to an "indebtedness," as these terms serve to define the category established by section 1. But when it appears, as it does, that the attachment, in truth, was issued in a pending action and in aid thereof, the interpretation of section 1 becomes quite irrelevant, and, as it seems to us, the query is not whether plaintiff and defendant sustain the relation of "creditor" and "debtor," exhibiting an alleged "indebtedness" within the meaning of the former, but rather whether plaintiff has commenced *an action* of *assumpsit, debt, covenant, trespass,* or *trespass on the case,* justifying the attachment, within the meaning of the latter, section.

That plaintiff had commenced, that there was pending when the attachment issued, an action properly termed "assumpsit," is not questioned. Upon this limited inquiry, the want of expression or interpretation by the final judicial authority of Illinois respecting section 1 is not pertinent, nor does the diversity of opinion respecting that section found in cases decided by intermediate tribunals, call for review or attempts at reconciliation. Firebaugh v. Hall, 63 Ill. 81; Capes v. Burgess, 135 Ill. 61, 25 N. E. 1000; Steele-Wedeles Co. v. Shoodoc Pond Packing Co., 153 Ill. App. 576; Meglemry v. Gebhart Chili Powder Co., 187 Ill. App. 14; American Lumber Co. v. Leach, 207 Ill. App. 62; Lepman & Heggie v. Interstate Produce Co., 205 Ill. App. 270.

It is, however, significant that, while the cases cited express diversity

of view respecting the limitations of section 1, for example, in assumpsit, when the damages are unliquidated, an original attachment may not be sued out, there is not in any of the cases the slightest suggestion that in section 31 there is any limitation, except such as arises upon its plain terms.

[2] This brings us directly to the contention of the defendant in error respecting this section, and it may be thus stated: Section 31 awards the attachment "in aid," in assumpsit, debt, covenant, trespass, or trespass on the case, "on filing * * * a sufficient bond and affidavit showing his right to an attachment under the first section of this act." Therefore, so it is argued, because an original attachment under section 1 will not issue where the damages are unliquidated, and an "in aid" attachment will not issue under section 31 unless the affidavit shows a right to an attachment under section 1, and, obviously, because an affidavit showing unliquidated damages does not show the right under section 1, there can be no "in aid" attachment under section 31, whenever the damages are unliquidated.

The statement of the argument at once excites the inquiry, what could have prompted legislative disclosure of the greatly enlarged policy respecting attachments, and the categories wherein they may issue, found in section 31, when the intent, in fact, was merely—the argument is reduced to this—to provide for "in aid" attachments in the limited category of section 1? Because, if the "right to an attachment" under section 1, as noted in section 31, means what the defendant in error contends, then the right can never exist, except in the relationship of "debtor" and "creditor," exhibiting an "indebtedness." Is it possible that the Legislature used the terms found in section 31—definitively including, as ingredients, liquidated or unliquidated damages—and still intended by the use of the language "showing a right to an attachment under section 1" to destroy the definitions? Our view is:

Section 31 was intended to deal with "in aid" attachments and to declare the categories wherein they may issue. It has entirely distinctive subject-matter, and the office of the clause prescribing the quality and terms of the affidavit is not to declare, define, or limit the categories. Under section 1 the *right* to an attachment is granted to a creditor against his debtor upon showing the existence of an indebtedness, howsoever those terms may be defined. But the right is exercisable only upon the coexistence and the assignment of any one or more of the nine grounds, viz. nonresidence, fraudulent transfer, etc. Under section 31 the right to an attachment is granted "in aid," a provisional remedy, in enumerated cases, assumpsit, debt, covenant, etc., provided, also, that in such a pending action there likewise be assigned as coexistent one or more of the nine grounds prescribed in section 1. This seems to us to be the plain office of this language, and it makes the two sections entirely consistent, carrying out the clear legislative intent to provide for greater liberality in the issuance of attachments. If this be not quite obvious, surely some explanation should be at hand for the limitations contained in section 31 upon the issuance of attachments in cases of trespass and trespass on the case through the intervention of a judge, or master in chancery, who must fix a limitation upon the amount, not

of the damages in the case, but the damages for which the attachment may issue; a like explanation for interposing a special procedural step in those cases and failing to prescribe any in actions of covenant or assumpsit, where the damages may be unliquidated, likewise for the amendment of 1895, which expressly places "assumpsit" in section 31.

Our conclusion is that the attachment issued finds clear justification in section 31, and that the contention of the defendant in error is without merit.

The order of the District Court is reversed, and the cause is remanded, with directions to overrule the defendant in error's motion to quash, and for further proceedings according to law.

### On Petition for Rehearing.

Upon petition for rehearing, defendants in error, after rearguing the only question originally presented, urged that, though the views expressed in the decision stand, "still a rehearing should be granted, and the reversing order of this court vacated, upon the following jurisdictional point, not heretofore called to the court's attention, but which nevertheless exists, and, being jurisdictional, controls," etc.

[3] Calling attention to section 31 of the Illinois attachment statute, conditioning the issuance of attachments in aid upon plaintiff's "having commenced an action by summons or capias," counsel proceeds:

"The record at bar shows a total failure of compliance with the express terms of the act, a filing of the affidavit upon which the writ was issued as the initial act, followed by the filing merely of a declaration in assumpsit, and that no summons or capias has at any time been issued. In other words, the attachment writ quashed by the court below was issued before the plaintiff had commenced an action by summons or capias. The statute provides a fundamental prerequisite of a pending suit commenced by summons or capias before the record will permit the filing of the affidavit and the then issuance of the writ. *At bar, there was no pending suit and no summons or capias. The attachment writ is void, a nullity, and therefore no reversal should be made upon the record.*"

Consulting the record as it came from the state to the federal court, we find:

(1) That the removal petition avers: (a) "That the above-named suit is an action at law commenced in this court on February 14, 1920." (b) That on the same date the plaintiff filed its certain declaration, whose allegations are summarized in the petition. (c) That the citizenship of the parties "at the time of the *institution of this action*" was and is as alleged. (d) That petitioner has not appeared *in this action,* that the time within which defendant is required to plead to the declaration of the plaintiff has not yet expired, and that the state court proceed no further, etc., except to make the order of removal.

(2) The writ of attachment issued by the state court contains as its opening recital:

"That the above-named *plaintiff commenced heretofore the above-entitled action, and that the same is still pending.*"

—which writ was issued by the court on February 14, 1920.

(3) The notice given pursuant to the Illinois law and returned with the record herein reads:

"Public notice is hereby given to the said Matthew Wilson that a writ of attachment in aid of a suit of law *heretofore commenced by summons and still pending*, issued out of the office of the clerk of the superior court of Cook county, dated the 14th day of February, 1920, at the suit of the said Hoosier Veneer Company," etc.

(4) The notice given by plaintiff in error's testator, Wilson, was "for the removal of said cause."

As indicated in the opinion upon the former hearing, the defendant in error, in the trial court, appeared specially, and there and here urged, not that no action was pending, but that the writ of attachment "was issued without warrant or authority in law, and seeks attachment upon an *alleged cause of action* under which the damages are unliquidated." True, a second specification, that plaintiff "did not file an affidavit," required for attachment "in aid" under the Illinois law, and a third, that the clerk of the court "issued the writ of attachment herein without warrant or authority in law," were included; but the first specification only was urged upon review. It may be noted, further, that the order of the District Court to which this writ of error is addressed, after reciting consideration of the "original affidavit for attachment in aid" and the amendments thereto, and the additional affidavit filed as supplemental amended "original affidavit for attachment in aid," directed:

"That the writ of attachment in aid be quashed, and the garnishee discharged, and *the suit herein be dismissed,* and that the defendant have and recover its costs herein, to be taxed against the plaintiff, for which let execution issue."

Thus the record returned from the state court shows that therein it was conceived that an action was pending, and the federal District Court had the same conception, for it entertained and allowed application to amend and supplemental affidavits for attachment—presumably in a pending suit—and directed the *dismissal of the suit.* Therefore the question arises: Can the defendants in error, having removed a suit, contend that no *pending* suit was removed? Of course, if "pendency" is to be tested out by inquiring whether jurisdiction over the person of a defendant or respondent has been obtained or perfected, it may be that no such suit or proceeding was pending. If that were the test, then no suit wherein jurisdiction is sought to be obtained through attachment against a nonresident could ever be "pending," unless and until the defendant named saw fit to confer jurisdiction over his person. Plainly, the attachment statutes contemplate the issuance of the writ as the means—jurisdiction over the person by service of summons or capias being impossible because of nonresidence—of compelling appearance through a seizure of the property. Therefore, can such a defendant appear in court—though specially—and concurrently maintain: (1) That in no sense was any suit or any proceeding pending in the state court; and (2) that the suit which was pending in the state court did not warrant the particular kind of attachment issued?

When defendants in error filed a removal petition, averring "that the above-named suit is an action at law commenced in *this* [state] court February 14, 1920," they should not be averse to having the federal court take them at their word; and when, upon examination of the state court record, we find a writ—the one here sought to be avoided—re-

citing the prior commencement of "the above-entitled action, and *that the same is still pending*," the defendants in error should not now be heard to gainsay their own and the state court records; but they should be held to have foreclosed contention respecting *pendency* of *a* suit or proceeding which they removed from the state court. In other words, there was pending in the state, and removed to the federal, court a suit or proceeding answering the test aptly furnished in Schroeder v. Merchants' & Mechanics' Insurance Co., 104 Ill. 71, 74, 75:

"What is the commencement of a suit? It is not claimed that it is the service of process on the defendant. It is believed that no case can be found that holds the suit is not commenced until service or appearance of defendant. We may therefore conclude that jurisdiction of the person of the defendant is not essential to the commencement of a suit. But it is apparent that a suit is not commenced until the court has in some manner acquired jurisdiction of something in relation to the controversy. It must, therefore, be over the person of the plaintiff, or the subject-matter, or both. The court acquires jurisdiction of the plaintiff when he applies for its power and assistance to compel the defendant to render him his rights under the law; but this aid must be sought according to prescribed forms, and under our practice that form requires that he file with the clerk of the court a præcipe for the process he desires. This is an application, in its nature, to the court to send its process to require the defendant to appear at a subsequent term to defend the action. The court clearly has jurisdiction of the plaintiff when he thus invokes its aid. When he thus submits his person to the court, he, by asking its aid, gives the court jurisdiction over the subject-matter in controversy, and confers power to adjudicate and determine his rights thus submitted. In this manner the court becomes possessed of jurisdiction of the person of the plaintiff and of the subject-matter, and when so possessed it becomes the duty of the court to commence and carry on the power to bring the defendant into court, that the case may be heard, and the rights of the parties in the matter thus brought before the court may be judicially and conclusively determined. It therefore follows that, when the plaintiff submits himself and the subject-matter to the jurisdiction of the court, and the court or law commences acting under his claim for its investigation, he has commenced his suit. When he puts the court or its instruments in motion under his claim, his action is commenced. All done in the case subsequently is but a continuation of the action he thus started, until the final end of the action or suit."

The contention now for the first time pressed, we think, may further be answered by reference to the principle enforced in Clark v. Wells, 203 U. S. 164, 172, 27 Sup. Ct. 43, 45 (51 L. Ed. 138), where it is observed:

"When the jurisdiction of the state court was terminated by the removal, that court had seized upon the attached property, with the right to hold it to answer such judgment as might be rendered. In the absence of personal service, the state statute provided for publication of notice of the pendency of the suit. If the defendant failed to appear, the court might proceed to render a judgment, which would permit the attached property to be sold for its satisfaction. To render such a judgment in the absence of an appearance and defense, the state court had only to require the statutory notice to the defendant when its proceedings were interrupted by the removal to the federal court on the application of the defendant. The federal court thus acquired jurisdiction of a cause of which the defendant had notice, as appears by his petition for removal and the action of the state court invoked by him. The defendant, it is true, had not been personally served with process or submitted his person to the jurisdiction of either the state or federal court. But he did not attack the validity of the attachment proceedings, which appear to be regular and in conformity to the law of the state. There was no necessity of publication of notice in the federal court in order to warn

the defendant of the proceeding; he knew of it, and to a qualified extent had appeared in it."

In the present case, too, the attachment proceedings "appear to be regular and in conformity to the law of the state"—at least we find no difficulty in viewing the attachment proceedings in aid justified by section 31 of the attachment statute; the "case" being clearly one of the several therein designated. It is true that here the defendants in error *do* "attack the validity of the attachment proceedings," but, as noted, upon a ground which necessitated the interpretation of the complaint or declaration—in other words, upon a ground presupposing the pendency of a suit whose character had to be determined upon inspection of the declaration. Hence, when the defendants in error removed from the state court what they characterized as a suit commenced therein on February 14, 1920, which removal carried with it the attachment theretofore issued, and when, upon the arrival of the case in the federal court, presupposing, of course, and asserting in fact, the pendency of *a* suit, they moved to quash the writ of attachment upon the ground, not that *no* suit was pending—that nothing was removed from the state court—but that, in a suit commenced and of the character as alleged, an attachment *in aid* could not have been issued, they effectually estopped themselves from thereafter trying to mend their hold by claiming that, no suit being pending, *no* attachment could issue. We hold that, when a suit has been removed from the state to a federal court and has been characterized as pending in the state court, whatever right may be reserved to object to jurisdiction over the person of the removing party, there is an appearance to "a qualified extent," precluding the removing party from claiming that he removed nothing.

[4] But, however much discussion may be indulged respecting the interpretation of section 31, or of the point now for the first time pressed, we believe that the later view of the Supreme Court of Illinois would impel the conclusion that the attachment in the present case may stand as "original," rather than as "in aid." See Humphreys v. Matthews, 11 Ill. 472, and May v. Disconto Gesellschaft, 211 Ill. 310, 71 N. E. 1001.

The petition for rehearing is denied.

1. **Collision** ⬅️83—**Tug and anchored steamer both held in fault in view of fog.**
    In a collision in a dense fog between a tug entering on anchorage ground in New York Harbor and an anchored steamer, within or slightly off such ground, both *held* in fault, the steamer for not ringing her fog bell, the tug for proceeding at the rate of 2½ to 3 knots an hour, and so failing to observe the caution required in view of warning, from noise of clipping hammers, of the near presence of some vessel.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes