## Charles A. Phelps, Appellant, v. Columbia Phonograph Broadcasting System, Inc., Appellee.

### Gen. No. 33,528.

Opinion filed December 31, 1929.

GRAY PHELPS and ARTHUR O. GRAVES, for appellant.

EASTMAN, WHITE, HAWXHURST & LIND, for appellee; HOMER C. DAWSON, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an original attachment brought by the plaintiff, Charles A. Phelps, against the defendant, Columbia Phonograph Broadcasting System, Inc., a corporation. Plaintiff's affidavit alleges that defendant "is indebted to him, after allowing all just credits and set-offs, in the sum of $5,472.70, upon an account for legal services rendered, secured and furnished, amounting to the sum of $5,000; court reporter's services, secured and furnished, amounting to the sum of $358.91; and moneys paid, laid out and expended amounting to the sum of $113.80"; that defendant "is not a resident of this State and that its place of residence is at New York City, in the State of New York." A bond was filed and a writ of attachment issued. Later, defendant entered a special appearance for the sole purpose of moving the court to quash the writ, for the reason

that the affidavit and declaration filed "both show on their face" that the plaintiff's claim is for unliquidated damages and that "an original attachment will not lie in Illinois for unliquidated damages." The court sustained the motion, quashed the writ and dismissed the suit at plaintiff's costs. Plaintiff has appealed.

Sections 1 and 2 of the Attachment Act, Cahill's St. ch. 11, ¶¶ 1 and 2, so far as they are material to the question before us, are as follows:

"Section 1. . . . That in any court of record having competent jurisdiction, a creditor may have an attachment against the property of his debtor, or that of any one or more of several debtors, when the indebtedness exceeds $20, in any one of the following cases:

"*First*—Where the debtor is not a resident of this State. . . .

"Sec. 2. To entitle a creditor to such writ of attachment, he or his agent or attorney shall make and file with the clerk of such court, an affidavit setting forth the nature and amount of the indebtedness, after allowing all just credits and set-offs, and any one or more of the causes mentioned in the preceding section, and also stating the place of residence of the defendants, if known, and if not known, that upon diligent inquiry the affiant has not been able to ascertain the same."

Plaintiff contends that the court erred in quashing the writ and dismissing the suit. Defendant contends that the court ruled correctly and for the reason that "an original attachment will not lie in Illinois for an unliquidated claim," and it cites in support of its position the following cases: *Steele-Wedeles Co. v. Shoodoc Pond Packing Co.*, 153 Ill. App. 576; *Lepman & Heggie v. Inter-State Produce Co.*, 205 Ill. App. 270; *Capes v. Burgess*, 135 Ill. 61, and *Duncan Lumber Co. v. Leonard Lumber Co.*, 332 Ill. 104, 106. The last

case cited has no bearing upon the Attachment Act, Cahill's St. ch. 11.

In *American Lumber Co. v. Leach*, 207 Ill. App. 62, the court, in discussing the question now before us, analyzes and comments on the other three cases cited by defendant, and we are in accord with what is there said as to these cases. We have examined the briefs in *Lepman & Heggie v. Inter-State Produce Co., supra*, and we find that counsel for plaintiff and defendant assumed in their arguments that an original attachment would not lie to recover unliquidated damages, and the only question discussed was whether the damages claimed were liquidated or unliquidated. The so-called rule that under the Illinois Attachment Act, Cahill's St. ch. 11, an original attachment will not lie to recover unliquidated damages, owes its origin to *Steele-Wedeles Co. v. Shoodoc Pond Packing Co., supra*, and while the court stated that the rule must be considered as settled, the only case cited in support of it (*Capes v. Burgess, supra*) passed upon the Garnishment Act, Cahill's St. ch. 62.

In *Humphreys v. Matthews*, 11 Ill. 471, 472, the claim was one for unliquidated damages and the court had before it the question as to whether an action of account, against a nonresident, could be commenced by original attachment. It was there said:

"Our attachment act is very broad, and the benefit of its provisions is not confined to any particular form of action. Any creditor is authorized, under certain circumstances, to sue out an attachment, and the statute is silent as to the nature or form of the action in which the writ may issue. The law was designed to furnish a creditor with the means of collecting his debt, in a case where he would be unable to do so in the ordinary mode of proceeding, and we can see no reason why it should not be as applicable to actions of account as to any other class of cases. . . .

"As to the sufficiency of the affidavit, there can be no question. After setting forth the dealings between the parties, and the nature of the indebtedness, with great particularity, it alleges that the defendant, by means of the premises, is indebted to the plaintiff in the sum of four hundred and fifty-three dollars and fifty-four cents, and that said defendant is not a resident of the state. Upon such an affidavit an attachment may properly issue."

The attachment act then in force, in so far as it related to the nature of the claim allowed under it, was practically the same as the present one. In *American Lumber Co. v. Leach, supra,* the court challenged the correctness of the rule laid down in *Steele-Wedeles Co. v. Shoodoc Pond Packing Co., supra,* and undoubtedly would have held contrary to it if it had been necessary to the decision of the case to do so. *Hoosier Veneer Co. v. Trusts & Guarantee Co.,* 283 Fed. 1, was an attachment action begun in an Illinois court for the recovery of damages for a breach of contract. After the case was removed to the federal court, upon motion of defendant, the attachment writ was quashed and the suit dismissed, and upon appeal the order of the district court was reversed and the cause was remanded with directions to overrule the defendant's motion to quash and for further proceedings. On a petition for a rehearing defendant contended that the attachment writ was not taken out in aid of a pending suit under section 31 of the Illinois Attachment Act, Cahill's St. ch. 11, ¶ 31, but was an original attachment proceeding and that therefore it would not lie because the damages were not liquidated. In passing upon this contention the court said (p. 8):

"But, however much discussion may be indulged respecting the interpretation of section 31, or of the point now for the first time pressed, we believe that the later view of the Supreme Court of Illinois would impel the conclusion that the attachment in the present case may

stand as 'original,' rather than as 'in aid.' See *Humphreys v. Matthews*, 11 Ill. 472, and *May v. Disconto Gesellschaft*, 211 Ill. 310, 71 N. E. 1001.''

In its original opinion the court stated that there was a diversity of opinion in the Appellate Court reports as to the correct interpretation of section 1 of the act, but when *Humphreys v. Matthews, supra,* and *May v. Disconto Gesellschaft*, 211 Ill. 310, were called to its attention, it held contrary to the ruling in *Steele-Wedeles Co. v. Shoodoc Pond Packing Co., supra.* The claim in *Hoosier Veneer Co. v. Trusts & Guarantee Co., supra,* was one for unliquidated damages. *May v. Disconto Gesellschaft, supra,* was an original attachment proceeding. The affidavit stated that the defendant was indebted to the plaintiff, ''after allowing all just credits and set-offs in the sum of $5,000, upon certain drafts and acceptances,'' obtained by the defendant ''by means of gross forgeries and various other criminal and fraudulent devices.'' Certain garnishees were served and plaintiff filed a declaration in trespass on the case by which it sought to recover the indebtedness mentioned in the affidavit. The garnishees answered admitting an indebtedness. May (appellant) interpleaded and set up an assignment to him of the money in the hands of the garnishees. Afterwards plaintiff filed an amended declaration in assumpsit. May moved the court to quash the writ and dismiss the suit, and discharge the garnishees, because (*inter alia*) the cause of action had been changed by filing the amended declaration. The court said (p. 315):

''*The parties to this appeal unite in assuming that an action ex delicto cannot be the basis of an original attachment suit,* and it is urged by appellant that as the cause stated in the original declaration was one clearly in tort, it must be held to have been an action in tort and that as a consequence thereof the attachment writ and all proceedings thereunder were void and appel-

lant's assignment of $3,000 of the fund was therefore effective. An inspection of the language above quoted from the affidavit for attachment shows that the action is brought to recover money which the defendant obtained by fraud and misrepresentation, and while an action *ex delicto* may be brought, it is also true that the plaintiff may waive the tort and sue in assumpsit for money had and received. . . . It follows, therefore, that as the affidavit set forth the nature and amount of an indebtedness for which a suit in assumpsit could be brought, it was sufficient to give the court jurisdiction.'' (Italics ours.)

We agree with *American Lumber Co. v. Leach, supra,* and *Hoosier Veneer Co. v. Trusts & Guarantee Co., supra,* that *May v. Disconto Gesellschaft, supra,* is an authority against a contention like defendant raises. In the latter case the damages claimed were unliquidated, but the court held that the affidavit was sufficient to give the court jurisdiction of the subject matter, and *Hoosier Veneer Co. v. Trusts & Guarantee Co., supra,* and *American Lumber Co. v. Leach, supra,* are to the same effect. Therefore, in considering the bearing of these cases upon the instant question, it must be borne in mind that the contention of the defendant is based upon the theory that where the damages claimed are unliquidated, the court has not jurisdiction of the subject matter of the suit, and the defendant by its special appearance challenged the jurisdiction of the court as to the subject matter. A lack of jurisdiction of the person may be waived, but a lack of jurisdiction of the subject matter cannot be conferred even by agreement, and may be raised by parties or the court at any time, and therefore the cases just cited—in each of which unliquidated damages were claimed—directly bear upon the instant question.

The basis of the defendant's contention is that the word ''indebtedness'' in section 2 must be held to mean

a liquidated claim. In 6 C. J. 81, it is said: "The remedy by attachment is not confined to cases where debt, in the technical sense, exists; it extends to every demand arising *ex contractu* where any fixed standard for determining the amount is supplied by the contract itself *or the law acting upon it.*" (Italics ours.) The author cites many cases in support of this text. In Drake on Attachment, 5th Ed., p. 12, the author says:

"It (debt) is a word in common use, and must needs have a natural, plain and ordinary signification; and wherever, as in connection with the subject of attachment, it occurs in a statute, it comes within the principle of construction expressed in Dwarris on Statutes, 573, that 'the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and popular use;' and laid down by Kent, that 'the words of a statute, if of common use, are to be taken in their natural, plain, obvious, and ordinary signification and import.'

"Blackstone says, 'The legal acceptation of *debt* is, a sum of money due by certain and express agreement; as by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease; where the quantity is fixed and specific, and does not depend upon any subsequent valuation to settle it.'

"This, however, is not the popular acceptation of the word. In general use it is not regarded as a technical word, nor written or spoken in a restricted or technical sense; but is universally employed as expressing whatever one man *owes* another, in any form of liability arising *ex contractu*. This, too, is its signification, as given by all English lexicographers." (Here the author cites the definitions given by seven well known lexicographers.)

In *Fisher v. Consequa,* 2 Wash. C. C. 382 (opinion by Mr. Justice Washington of the United States Supreme Court), in passing upon the Pennsylvania At-

tachment Act, which allowed attachment in cases of debt, it is said (pp. 385–8):

"What is a debt? In strict language, it is a precise sum due by express agreement, and does not depend upon any after calculation to ascertain it. . . . But is this the only case within the mischief intended to be remedied by this law? Surely, an inhabitant of Pennsylvania is not less injured by the want of a remedy to recover what is due to him by a foreigner, upon a sale of property, where no price was stipulated, than he would be if a fixed price had been agreed on. In the latter case, the defendant is indebted to the plaintiff in a precise sum; and in the former, a sum equal to the value of the property sold, not then, it is true, liquidated, but depending upon the value to be fixed at the trial. The uncertainty of the sum due, does not, in the common understanding of mankind, render it less a debt. A promise, whether express or implied, to pay as much as certain goods or labour are worth, or as much as the same kind of goods may sell for on a certain day, or at a certain market; or to pay the difference between the value of one kind of goods and another, creates, in common parlance, a debt; and the person entitled to performance does not speak of his claim, as for damages, but for a debt, to the amount which he considers himself entitled to."

In *Roelofson v. Hatch*, 3 Mich. 277, the court, in passing upon the meaning of the word "indebtedness" in the attachment act of that state, said:

"There are many contracts where, although the damages are not liquidated in the contract, yet by well established rules of law they are capable of being ascertained definitely upon proof of the facts, and to hold, that in all this class of cases, the plaintiff is debarred of this remedy, would be to defeat, in a great measure, the purposes sought to be secured by its enactment. . . . What is an indebtedness? It is the owing of a sum of money upon a contract or agreement

and in the common understanding of mankind, it is not less an indebtedness that such sum is uncertain. The result of a contrary doctrine would be, to hold any liability which could only be the subject of a general *indebitatus assumpsit, quantum meruit,* or *quantum valebant* count in a declaration, such an indebtedness as could not be the subject of this remedy by attachment. . . .

"*In the present case the contract furnishes such standard, equally as does any contract for goods sold, or work or labor done, without express agreement as to price or compensation.*" (Italics ours.)

In *Carland & Bierne v. Cunningham,* 37 Pa. St. 228, it was held that under an attachment act which allowed attachment in cases of debt an attachment would lie for such damages resulting from the breach of a contract as may be reduced to certainty by a definite standard. In Connecticut the statute gave the "process" to creditors against their debtors, and in *New Haven Steam Saw-Mill Co. v. Fowler,* 28 Conn. 103, it was said:

"Lawyers often speak of a debt as that for which an action of debt will lie, meaning by it a sum of money due by certain and express agreement; but in a less technical sense, says Bouvier, it means any claim for money. And in a still more enlarged sense, it denotes any kind of a just demand. It is, therefore, equally proper to say of one who is under obligation to discharge some duty, or to pay damages for its non-performance, that he is a debtor, as it is to say the same of one who is under obligation by bond to pay a sum of money."

In *Wilson v. Wilson,* 8 Gill. 192, the court held that the term "indebted" in the Maryland Attachment Act was not to be construed in a technical or strict legal sense and that an attachment might issue on any demand arising *ex contractu,* where the contract ascertains the amount of indebtedness, or fixes a standard

so certain as to enable the plaintiff, by affidavit, to aver it, or the jury, by their verdict, to ascertain and find it. In *Lenox, Maitland & Renwick v. Howland,* 3 Caines 323, in passing upon the New York Attachment Act, which required a creditor to swear that the party is indebted to him in the sum of $100 or upwards, the court held that "it does not follow that the demand is to be certain as to fall within the technical definition of a debt, or as to be susceptible of liquidation, without the intervention of a jury. . . . Being indebted is synonymous with owing; it is sufficient, therefore, if the demand arises on contract." Many other attachment cases to the same effect as the foregoing might be cited.

Under section 31 of our Attachment Act, Cahill's St. ch. 11, ¶ 31, an attachment in aid will lie even for a tort claim and a plaintiff may commence a tort action and immediately thereafter sue out a writ of attachment in aid of the suit. (*Schulenberg v. Farwell,* 84 Ill. 400.) Section 31 provides that plaintiff, in his affidavit, must show "his right to an attachment under the first section of this Act," and, therefore, even in a tort action he must aver that the defendant is indebted to him in a certain amount, thus plainly showing that the legislature did not use the words "debtor" and "indebtedness" in a narrow and strictly technical sense. In our judgment section 31 cannot be ignored entirely in interpreting sections 1 and 2, and with such a broad, liberal attachment in aid section, why should sections 1 and 2 be given the interpretation that defendant contends for, especially as many of the courts of the United States, in interpreting attachment acts, have disregarded Blackstone's narrow, technical definition of the word "debt"? If the defendant's contention is correct, then a creditor is barred from the benefit of original attachment under any contract for goods sold, or. work or labor done, where there is no express agreement as to price or compensation, although the

value of the goods or services is clearly ascertainable by competent, legal evidence. The mere fact that witnesses might differ as to the value of the goods or services should not deprive a creditor of the benefit of the act, as the law fixes a standard for determining the value of the goods or services. The defendant's construction, in our opinion, does violence to the plain intent of the act, and in practice would emasculate what was intended to be a useful remedy for a creditor.

After a very careful consideration of the important question involved in the present appeal, we have reached the conclusion that as the plaintiff's demand arises *ex contractu* an original attachment will lie even though the claim is for unliquidated damages. Whether original attachment would lie in tort actions is not before us for determination.

The judgment of the superior court of Cook county is reversed and the cause is remanded with directions to the trial court to overrule the defendant's motion to quash the writ of attachment and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

Barnes, P. J., and Gridley, J., concur.