Chicago Auditorium Association for use of Mark Skinner Willing. Appeal of Mark Skinner Willing, Appellant, v. Continental Illinois National Bank and Trust Company of Chicago, Appellee.

Gen. No. 40,384.

Opinion filed April 26, 1939.   Rehearing denied May 8, 1939.

CONCANNON, DILLON, BOSTELMAN & SNOOK, of Chicago, for appellant; R. F. BOSTELMAN, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; DAVID F. ROSENTHAL, WILLIAM D. DOGGETT and CARL COHN, all of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Plaintiff, Mark Skinner, obtained a judgment at law against the Chicago Auditorium Association on November 4, 1931, for the sum of $779,000. Thereafter plaintiff instituted an ancillary suit in garnishment on May 10, 1937 against the Continental Illinois National Bank and Trust Company of Chicago, hereinafter referred to as the "Continental Bank" or the "garnishee."

In the affidavit for garnishment it was alleged that the garnishee was indebted to the defendant, Chicago Auditorium Association, or had effects or estates of said association in its hands. One of the questions asked of the garnishee was whether it had a so-called coupon account of undisbursed funds deposited by the Chicago Auditorium Association with said bank or its predecessors, said funds having been deposited originally for the purpose of paying interest accruing on bonds secured by the aforesaid trust deed, dated February 1, 1889, and also accruing on bonds of another trust deed of the Chicago Auditorium Association dated February 1, 1892.

It appears that in 1889, the Auditorium Association created a bond issue in which the garnishee or its predecessor, Illinois Trust and Savings Bank, was the trustee of the trust deed that was issued to secure

the bonds and coupons attached thereto and issued thereunder.

All bonds and interest coupons of both issues were made payable "at the office of the Illinois Trust and Savings Bank," which was the predecessor of the present garnishee.

To the interrogatories the garnishee filed its answer admitting that it held $2,050 in undisbursed funds in a coupon account kept *in the name of the Chicago Auditorium Association,* but denied that the association had any legal or equitable interest in said funds. The answer further set out that the $2,050 accrued by reason of the failure of holders of an equivalent amount of outstanding interest coupons to present the same for payment. The interest coupons which holders failed to so present became due on various dates over the period from approximately 1890 to August 1, 1928.

The cause was tried before a court, a jury having been waived, and the court found the issues in favor of the garnishee and entered an order discharging the garnishee. Plaintiff brings this appeal from that order and contends as follows:

*First:* The interest coupons were merely made payable "at the office" of a designated bank, being the garnishee. In depositing funds to meet such coupons the Continental Bank became the agent of the Chicago Auditorium Association, which agency was revocable. Thus, upon demand the association was entitled to the return of such funds and the same could be garnisheed.

*Second:* Either a debtor and creditor or an agency relationship existed as between the Continental Bank and the Chicago Auditorium Association. Under the evidence the Chicago Auditorium Association did not relinquish and surrender all control of the funds deposited nor was there any intention on the part of the association so to do.

*Third:* No trust existed with respect to the funds deposited to meet interest coupons. To establish such

a trust there must be unequivocal language to show an intention on the part of the Chicago Auditorium Association to create the same. Such unequivocal language is entirely lacking.

*Fourth:* Under the trust indentures the Chicago Auditorium Association was not obligated to deposit funds with the bank to pay coupons nor was there any agreement, either express or implied, that a deposit of interest moneys would relieve the Chicago Auditorium Association from further liability on such coupons. Since the Chicago Auditorium Association was not relieved from liability by making a deposit, a trust was not established for the benefit of coupon holders.

*Fifth:* The garnishee bank and its predecessors never agreed to pay over moneys (if deposited) to coupon holders. Thus, the bank never agreed to become a trustee or agent for such holders.

The garnishee contends that it occupies the status of a trustee of the aforesaid funds and that the liability of the Chicago Auditorium Association to interest coupon holders ceased upon the deposit of funds with the bank and that therefore the funds cannot be garnisheed.

The evidence shows that the money was sent by the Auditorium Association to the trustee, now garnishee, for the purpose of paying the amount due at the time on bonds and coupon interest notes secured by the trust deed. In indicating the purpose in sending the money to the bank, there was offered in evidence a letter from the Illinois Merchants Trust Company, the predecessor of the present garnishee and trustee, which reads as follows:

"We acknowledge receipt of your check for $34,375, in *payment* of the semi-annual interest on the Consolidated Mortgage and the First Mortgage Bonds of your Association."

We think there is no doubt that the evidence shows that this money was sent by the Auditorium Associa-

tion to the Continental Bank, the garnishee, for the purpose and with the intention of paying the debt due from the Auditorium Association to the holders of the bonds and interest coupons under the trust deed.

The most recent garnishment case which deals with the rights of the parties and the law applicable thereto, is that of *Zimek v. Illinois Nat. Casualty Co.*, 370 Ill. 572, wherein the court at p. 574, said: "The garnishment process is remedial in nature, designed to reach property belonging to the judgment debtor after ordinary execution has failed. (*Wheeler v. Chicago Title and Trust Co.*, 217 Ill. 128.) It is not a distinct and separate suit, but an additional step in the original action for judgment. (*Kelley v. Ryan*, 36 Pac. (Wash.) 478.) . . . The statute permits garnishment process against any person 'supposed to be indebted' to the judgment debtor. (Ill. Rev. Stat. 1937, chap. 62, par. 1.) This court has recognized the general rule that the indebtedness sought to be garnisheed must be a liquidated sum due without contingency at the date when the answer to the garnishment suit is filed. (*Wheeler v. Chicago Title and Trust Co., supra; Capes v. Burgess*, 135 Ill. 61.) Usually it must be a claim on which the judgment debtor, himself, could have maintained an action against the garnishee. (Shinn on Attachment and Garnishment, secs. 475–483; 28 Corpus Juris, p. 44.) In the present case it is said the claim is contingent because the casualty company denies that it is liable to Zimek under the terms of the policy of insurance. But defendant misconceives the nature of the contingency contemplated by the rule. A contingent claim is one where liability hinges upon some future event, which may or may not occur; it is dependent upon some condition as yet unperformed. (*Grand Lodge I. O. O. F. v. Troutman*, 103 Pac. (Kan.) 94.) . . . A determination of whether an action of debt or *indebitatus assumpsit* will lie against the garnishee is merely a convenient test to ascertain whether the

claim is liquidated and not contingent. In *Capes v. Burgess, supra,* where we had occasion to refer to such a test, we held the claim was unliquidated and for that reason could not be garnisheed.''

In the instant case when the money was sent by the Auditorium Association to the Continental Bank, for the purpose of paying the indebtedness due on its bonds, the owners of those bonds immediately became vested in equity, at least, with a lien upon said money for the payment of their bonds and interest. After having sent the money and it was received by the trustee for the benefit of third persons, the Auditorium Association could not itself recover the money by means of a suit. And, if it could not recover it, the plaintiff in this case has no greater rights than the debtor had itself.

As the Supreme Court said in the case of *Carson, Pirie, Scott & Co. v. Parrett,* 346 Ill. 252, at p. 257: ''The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; . . .''

The equities of the unpaid bondholders and stockholders being disclosed by the garnishee, the court did right in taking the same into consideration. It would be inequitable to deprive these unpaid bondholders and interest coupon holders of their money by entering a decision on a proceeding to which they are not a party.

We find nothing in the decision of the trial court which should be disturbed and for that reason the judgment of the superior court is hereby affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.