Bosque Co Bk v. FNB Hico 















IN THE
TENTH COURT OF APPEALS
 

NO. 10-91-136-CV

Â Â Â Â Â Â Â Â BOSQUE COUNTY BANK,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â FIRST NATIONAL BANK OF HICO,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

 From the 220th District Court
Bosque County, Texas
Trial Court # 91-01-00891-BCCV
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Â Â Â Â Bosque County Bank (BCB) appeals a summary judgment entered for the First National
Bank of Hico (Hico) in a post-judgment garnishment proceeding. Hico had obtained an
$88,772.60 judgment against Harlon Koonsman, who had a banking relationship with BCB for
several years. On March 2, 1990, Hico caused a writ of garnishment to be served on BCB in an
attempt to satisfy its judgment against Koonsman. When the writ was served, Koonsman's
checking account balance at BCB totaled $513.53, and he owed BCB $40,771.20 on a line of
credit represented by a one-year $50,000 note maturing on August 23, 1990. 
Â Â Â Â Â Â Â Â Â Â The trial court granted a summary judgment in favor of Hico for $65,701.99, plus interest
and attorney's fees, which consisted of the following: $500 debited by BCB from Koonsman's
checking account after the writ was served and applied against his loan balance; $35,757.28, the
total of two third-party checks endorsed to the bank by Koonsman and applied by BCB against his
loan balance following service of the writ; and $29,444.71 deposited to Koonsman's checking
account by BCB after the writ was served to cover checks drawn on the account. 
Â Â Â Â Â Â Â Â Â Â BCB asserts three points of error on appeal, to-wit: (1) the Texas garnishment statutes are
unconstitutional because they do not afford the garnishee due process; (2) the court erred in
granting the summary judgment for payments made by Koonsman on the note; (3) the court erred
in granting the summary judgment for the funds advanced by the bank to pay the insufficient
checks. Hico claims by cross-point that the trial court should have granted Hico a summary
judgment for an additional $30,812.48, the amount allegedly still available to Koonsman on the
line of credit. 
Â Â Â Â Â Â Â Â Â Â Garnishment is a statutory remedy by which a garnishor may impound a debtor's property
in the possession of or owing by a third party to the debtor and apply those funds to the
satisfaction of the garnishor's debt. Beggs v. Fite, 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937). 
Essentially, the garnishor is subrogated to his debtor's rights against the garnishee. Id. By
complying strictly with the statutory requirements, the garnishor occupies the position of his
debtor against the garnishee and may enforce whatever rights the debtor could have enforced if
the debtor had sued the garnishee directly. Mensing v. Engelke, 67 Tex. 532, 4 S.W. 202, 204-05 (1887). However, the garnishor is bound by all of the existing legal rights and obligations
between the debtor and the garnishee. Bank One v. Sunbelt Sav., 824 S.W.2d 557-58 (Tex.
1992). Thus, the garnishor cannot assert a greater claim against the garnishee than could the
debtor, and similarly, the garnishee is in no worse position following service of the writ than if
the debtor had sued directly. Rome Industries, Inc. v. Intsel Southwest, 683 S.W.2d 777, 779
(Tex. App.âHouston [14th Dist.] 1984, writ ref'd n.r.e.); Farmers and Merchants State Bank of
Teague v. Fetzer, 185 S.W. 596, 597 (Tex. Civ. App.âDallas 1916, no writ). The garnishee can,
therefore, set up any defense, counterclaim, or offset that could be raised in response to a direct
suit by the debtor. Orleans Mfg. Co. v. Hinckley, 61 S.W.2d 865, 866 (Tex. Civ. App.âSan
Antonio 1933, writ dism'd). Generally, the garnishee's potential liability is determined by
whether the garnishor's debtor could have successfully sued the garnishee for recovery of the
property. Pearson Grain Co. v. Plains Trucking Co., Inc., 494 S.W.2d 639, 641 (Tex. Civ.
App.âAmarillo 1973, writ ref'd n.r.e.).
Â Â Â Â Â Â Â Â Â Â By BCB's first point of error, it argues that the Texas statutes and rules governing
garnishment are unconstitutional because they do not afford the garnishee due process as
guaranteed under the Fourteenth Amendment of the United States Constitution. See U.S. Const.
Amend. XIV. BCB claims that they wholly fail to notify a garnishee that its own property may
be at risk by being held liable to the extent of a judgment if the garnishee fails to answer, answers
incorrectly, or takes legally prohibited action. See Tex. Civ. Prac. & Rem. Code Ann. Â§
63.001â.005 (Vernon 1986); Tex. R. Civ. P., Rules 657-679. 
Â Â Â Â Â Â Â Â Â Â The question of the constitutionality of the garnishment statutes and rules has already been
decided against BCB. The postjudgment garnishment proceeding used in this case has been held
to be a constitutional and valid method of enforcing a valid original judgment. See Southwest
Metal, etc. v. Intern. De Aceros, 503 F.Supp 76, 77-8 (1980); Owen Elec. Supply v. Brite Day
Const., 821 S.W. 2d 283, 286 (Tex. App.âHouston [1st Dist.] 1991, no writ). Appellant's first
point of error is overruled.
Â Â Â Â Â Â Â Â Â Â BCB complains in its second point of error that the trial court erred in granting the motion
for summary judgment as to the "deposits" made by Koonsman because the "deposits" were
payments owed to BCB and were never property of Koonsman in the hands of BCB. The trial
court held that BCB was liable "on two deposits totalling $35,757.28 which were . . . applied to
the line of credit." The third-party checks made payable to Koonsman totalling $35,757.28 were
never deposited to Koonsman's checking account but were applied directly to the line of credit by
BCB for Koonsman's benefit. At minimum, a material fact issue precluding a summary judgment
was raised by BCB in the trial court in its response to the motion for summary judgment as to
Koonsman's intent in tendering the checks to BCB.
Â Â Â Â Â Â Â Â Â Â Payment to partially discharge his obligations appears to be what occurred between
Koonsman and BCB upon his tender of the funds. Money paid to discharge a valid debt cannot
later be returned or retrieved. Tyler v. Tyler, 742 S.W.2d 740 (Tex. App.âHouston [14th Dist.]
1987, writ denied). At the very least, a fact question was raised regarding Koonsman's intent as
to the funds tendered. We sustain Appellant BCB's second point of error.
Â Â Â Â Â Â Â Â Â Â By its third point of error BCB contends that the trial court erred in granting the motion
for summary judgment as to the checks "honored" by BCB because the checks were only honored
by the extension of credit and thus were a lawful and proper offset. The trial court awarded
judgment to Hico for $29,856.80, the total amount of checks drawn by Koonsman against his
checking account and honored by BCB. In each instance, Koonsman's checks were presented to
BCB for payment when his checking account balance was insufficient to cover the amount of the
check.
Â Â Â Â Â Â Â Â Â Â Presentment of the checks when the account holds insufficient funds creates an overdraft
when the check is paid. See generally Tex. Bus. & Com. Code Ann. section 4.401. The
overdraft creates a debt of the customer to the bank, payable on demand. Id. at section 3.108;
Williams v. Cullen Center Bank & Trust, 685 S.W.2d 311 (Tex. 1985). BCB contends that this
debt is subject to offset. In each instance, BCB paid Koonsman's overdrafts by making him a loan
under the terms of the line of credit. By making the loan, BCB maintained the debtor-creditor
relationship represented by the checking account at a minimal balance, but at the same time
secured the advance of funds by the line-of-credit security agreement. Thus, the maturity of the
line of credit is irrelevant to the determination of whether BCB was entitled to setoff a debt of
Koonsman in his checking account by loaning him money. BCB argues that the garnishment is
subordinate to the contractual and equitable right of offset of BCB. See San Felipe National Bank
v. Caton, 668 S.W.2d 804 (Tex. App.âHouston [14th Dist.] 1984, no writ).
Â Â Â Â Â Â Â Â Â Â BCB has acknowledged that it advanced more money than necessary each time an overdraft
was covered. The amount of excess funds totalled $991.35. BCB also admits that these amounts
could have been claimed and freely spent by Koonsman, but BCB argues that because Koonsman's
account balance was always subject to offset due to overdrafts, BCB is not liable on the writ for
any of those amounts. We agree, and sustain Appellant's third and final point of error.
Â Â Â Â Â Â Â Â Â Â Appellee Hico filed a crosspoint asserting that the trial court erred in failing to find that
the unfunded sum of $30,812.48 represented money in the bank payable to Koonsman's command
and subject to impoundment by the writ of garnishment. The loan agreement specifically provides
that "each advance (loan) under this agreement shall be in the sole discretion of Lender (BCB)." 
However, Mr. Wimberly, BCB's president, testified in effect that when Koonsman "sends a check
in and it hits the account," that the bank would "pretty much" automatically draw against
Koonsman's line of credit. This creates a material fact issue. However, be that as it may, we
know of no procedure authorizing an appeal from the trial court's refusal to grant a summary
judgment. Appellee's crosspoint is overruled.
Â Â Â Â Â Â Â Â Â Â For all of the foregoing reasons, we reverse the trial court's judgment and remand the
entire cause for trial on the merits.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JOHN A. JAMES, JR.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice (Retired)
Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Chief Justice McDonald (Retired)
Â Â Â Â Â Â Â Â Â Â Justice James (Retired)
Reversed and remanded
Opinion delivered and filed February 17, 1993
Do not publish



fs proved Shupe negligent
saying:  ÂWe believe that the evidence
strongly supports a finding Shupe was negligent.ÂÂ  We have never been authorized to substitute
our view of the evidence for the juryÂs view of it.Â  See e.g.
Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex.
2000) (ÂIt is a familiar principle that in conducting a factual sufficiency
review, a court must not merely substitute its judgment for that of the
jury.Â).

Â Â Â Â Â Â Â Â Â  It
is clear from a full review of the record that this case was about
causation.Â  Viewed objectively, the
juryÂs verdict tells us that when Heppler was unable to stop in his lane of
traffic and bounced his pick-up off the back-side of a van and into the
oncoming lane of traffic directly into the path of an oncoming truck, it did
not matter who was driving that truck or how that driver was operating it; there
was going to be a wreck.

Â Â Â Â Â Â Â Â Â  That
was the first wreck.Â  This CourtÂs
opinion is the second.Â  Paraphrasing the
Court, I believe that the record strongly supports the juryÂs refusal to find
that anything other than HepplerÂs failure to control his vehicle was the
proximate cause of this multi-vehicle wreck.

Conclusion

Â Â Â Â Â Â Â Â Â  Because
it cannot be error to refuse to submit an immaterial instruction, because it
cannot be harmful error to the party with the burden of proof to submit less
than all the elements of a claim, because it cannot be harmful error to submit
other elements of a claim if the party with the burden of proof was unable to
prove even the elements submitted, and because the Court simply disagrees with
the juryÂs refusal to find Shupe negligent and reverses the judgment, I
dissent.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Dissenting
opinion delivered and filed November 17, 2004